117 T.C. No. 23


UNITED STATES TAX COURT


PATRICIA M. MORA, F.K.A. PATRICIA RASBERRY,
Petitioner, AND
LYNN RASBERRY, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6154-00.                   Filed December 17, 2001.


H invested in a tax shelter limited partnership
that passed through substantial losses that were
claimed on the joint Federal income tax returns H and W
filed for the taxable years 1985 and 1986, and
disallowed by R.  After H and W were divorced W sought
relief from joint and several liability.  R denied W's
request for relief from joint and several liability
under sec. 6015(b) and (c), I.R.C., on the ground that
W had knowledge of the items giving rise to the
deficiencies.

 <u>Held</u>, W is not entitled to relief from joint and
several liability under sec. 6015(b), I.R.C.; W had
reason to know of the understatements by reason of the
size of the losses in relation to the income of H and
W.  A reasonable person in W's position would have made
inquiries to determine the legitimacy of the losses,
and W failed to make any such inquiries.

Held, further, W is entitled to relief under sec. 6015(c), I.R.C. The items giving rise to the deficiencies (the disallowed partnership losses) are properly attributed to H's activities and partnership interest. W did not have actual knowledge of the items giving rise to the deficiencies at the time she signed the tax returns. Under the standard enunciated by this Court in King v. Commissioner, 116 T.C. 198 (2001), the test for actual knowledge under sec. 6015(c)(3)(C), I.R.C., is whether the requesting spouse had actual knowledge of the facts resulting in the disallowance of the losses. Contrary to respondent's argument, the King standard should be applied to both active and passive activities. Therefore, petitioner is entitled to relief from joint and several liability under sec. 6015(c), I.R.C.

Held, further, pursuant to sec. 6015(d)(3)(B), I.R.C., W is not relieved of liability under sec. 6015(c), I.R.C., to the extent that she received a tax benefit from the disallowed partnership losses claimed on the joint returns.

Patricia M. Mora, f.k.a. Patricia Rasberry, pro se.

Lynn Rasberry, pro se.

Thomas M. Rohall and Kathryn K. Vetter, for respondent.

BEGHE, Judge:  This case is before us on petitioner's "stand-alone" petition under section 6015(e)(1)[1] for relief from joint and several liability, following respondent's denial of relief.  Intervenor is petitioner's former spouse, who intervened under section 6015(e)(4) and Rule 325.  Intervenor and respondent

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

both contend that petitioner is not entitled to relief under either section 6015(b) or (c).

We sustain respondent's determination that petitioner is not entitled to relief under section 6015(b), but hold that petitioner is entitled to partial relief under section 6015(c).

FINDINGS OF FACT

Most of the facts have been stipulated and are so found. The stipulation of facts and the related exhibits are incorporated by this reference. Petitioner and intervenor both resided in California at the time their petition and request for intervention, respectively, were filed with this Court.

Petitioner was born in 1962 and came to the United States from Uruguay in June 1984. Before moving to the United States, petitioner obtained the equivalent of an associate's degree in business administration from a community college in Uruguay. Petitioner is fluent in English.

Intervenor was born in 1955 and is not a college graduate.

Petitioner and intervenor were married on November 30, 1984. In 1985 and 1986, petitioner and intervenor both worked at the California State capitol. Petitioner worked as a clerk for an assemblywoman, and intervenor worked for the California State senate. Petitioner and intervenor filed joint Federal income tax returns for 1985 and 1986.

Sometime before 1985, intervenor was introduced through a coworker to an investment syndicator and tax preparation service known to him as Hoyt Investments.  Walter J. Hoyt III and some members of his family were in the business of creating tax shelter limited partnerships for their cattle breeding operations.  As part of their services, the Hoyt organization also prepared the investors' tax returns.  For a description of the Hoyt organization and its operation, see Bales v. Commissioner, T.C. Memo. 1989-568; see also River City Ranches #4, J.V. v. Commissioner, T.C. Memo. 1999-209, affd. without published opinion ___ F.3d ___ (9th Cir., November 26, 2001).

Intervenor attended a meeting organized by the Hoyt organization at which he decided to participate in a tax shelter limited partnership and have the Hoyt organization prepare his and petitioner's joint Federal income tax returns.  Intervenor signed all the partnership forms, gave the Hoyt organization a check for $25, and thereby became a limited partner in Shorthorn Genetic Engineering 1983-2, Ltd. (Shorthorn partnership).  According to the Shorthorn partnership's records, the partnership interest was held in the names of both petitioner and intervenor, even though petitioner had not signed any of the partnership documents.

Intervenor did not have material discussions with petitioner about his decision to invest in the Shorthorn partnership tax

shelter or about his decision to allow the Hoyt organization to prepare his and petitioner's joint tax returns.

Petitioner had little if any involvement with the Hoyt organization. She was new to this country, had no experience with U.S. income tax laws, and trusted intervenor to handle their tax return preparation. However, petitioner was aware that intervenor had made some financial arrangements with the Hoyt organization.

Petitioner and intervenor were both wage earners who did not itemize their deductions. The tax office of W.J. Hoyt & Sons Management Co. prepared their 1985 and 1986 tax returns. Intervenor delivered his and petitioner's financial information (consisting of the wage information from their Forms W-2, Wage and Tax Statement) to the Hoyt office. From that information, the Hoyt office prepared and mailed the final returns to petitioner and intervenor for their signatures.

The joint Federal income tax return of petitioner and intervenor for 1985 showed wages of $30,203 and Shorthorn partnership losses of $20,180. Their joint return for 1986 showed wages of $36,943 and Shorthorn partnership losses of $26,234. On the basis of the filed returns, petitioner and intervenor received income tax refunds of $3,185 for 1985 and $3,947 for 1986.

Hoyt told intervenor to endorse and forward the refund

checks when received to the Hoyt office so that Hoyt could calculate and deduct intervenor's required contribution to the Shorthorn partnership. Intervenor delivered the endorsed refund checks to Hoyt.[2]

Intervenor had invested only $25 in the Shorthorn partnership at the time he and petitioner filed their joint 1985 Federal income tax return, in which they claimed $20,180 in tax losses from the Shorthorn partnership. As a result of the Shorthorn partnership losses, petitioner and intervenor received a tax refund for 1985 of $3,185. Intervenor signed the refund check over to the Shorthorn partnership and received back less than $500. The Shorthorn partnership kept the balance of the income tax refund as intervenor's Shorthorn partnership capital contribution.

At the time petitioner and intervenor filed their 1986 return, intervenor had invested less than $3,000[3] in the Shorthorn partnership, yet claimed an additional $26,234 of Shorthorn partnership losses (together with the 1985 losses, petitioner and intervenor recognized a total of $46,414 in

---

[2]It is unclear whether, and if so how (a general endorsement or a restrictive endorsement), petitioner endorsed the refund checks.

[3]According to the testimony, intervenor had invested the original $25 plus the $3,185 tax refund endorsed to the Hoyt Organization, less approximately $500 of the tax refund that they received back from the Hoyt organization.

partnership losses). It appears that most of petitioner and intervenor's 1986 refund was also paid to the Shorthorn partnership.

Respondent examined the Shorthorn partnership's returns, and issued notices of final partnership administrative adjustment (FPAA) to the Shorthorn partnership. Walter J. Hoyt III, as tax matters partner for the Shorthorn partnership, filed a petition with this Court, docket No. 29295-89, which was consolidated with other Hoyt partnership cases.

After the partners' stipulations in Bales v. Commissioner, supra, the tax matters partner for the Shorthorn partnership stipulated most of the issues raised by the Commissioner. The Tax Court issued an opinion affirming the Commissioner's calculations regarding the effect of the stipulation on each of the partnerships, which is reported at Shorthorn Genetic Engineering 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515. On the basis of the stipulations and opinion, a substantial portion of the Shorthorn partnership losses was disallowed. According to respondent, the losses were disallowed because, among other things, the Shorthorn partnership overstated both the number and value of animals owned by the partnership that formed the basis for the deductions.

On the basis of the stipulated and decided issues at the partnership level, respondent denied a portion of the losses that

were passed through to intervenor from the Shorthorn partnership for 1985 and 1986. The denial of the losses resulted in computational adjustments owing by petitioner and intervenor, which were timely assessed as deficiencies on April 13, 1998.

On December 30, 1986, petitioner and intervenor filed a joint petition for summary dissolution of their marriage. In the their dissolution petition, petitioner and intervenor stated that they had no community assets or liabilities. The divorce became final in 1987. The divorce was amicable.

On July 16, 1998, after respondent mailed a notice of computational adjustment to petitioner and offset two of her income tax refunds from later year returns,[4] petitioner filed with respondent a Form 8857 requesting relief from joint and several liability. On February 23, 2000, respondent mailed to petitioner a determination letter denying petitioner's request for relief from joint and several liability under both section 6015(b) and (c). The explanation accompanying the denial states:

> Your claim for innocent spouse has been disallowed
> under IRC 6015(b) & IRC 6015(c). You did not meet one
> of the qualifying factors required under 6015(b) and
> 6015(c) lack of knowledge of the understatement.

---

[4]According to petitioner's testimony at trial, respondent initially offset two of her income tax refunds. One of petitioner's tax refunds was returned to her after she filed her request for relief from joint and several liability. Respondent has retained one of her tax refunds.

On May 23, 2000, petitioner timely mailed to this Court a petition for redetermination of relief from joint and several liability on a joint return.

On July 11, 2000, respondent mailed a notice to intervenor, informing him that petitioner had filed a petition with this Court requesting relief from joint and several liability and that he had a right to intervene. On September 19, 2000, intervenor filed a notice of intervention with this Court, requesting that petitioner's petition for relief from joint and several liability be denied.

ULTIMATE FINDINGS OF FACT

A reasonably prudent taxpayer in the circumstances of petitioner would have known that the tax liabilities stated on the returns were erroneous or that further investigation was warranted.

Petitioner had no actual knowledge of the facts resulting in the disallowance of the Shorthorn partnership losses.

OPINION

With certain exceptions, a husband and wife may elect to file a joint return based on their aggregate taxable income. See sec. 6013(a). After making the election to file a joint return, each of the spouses is jointly and severally liable for the entire tax due. Sec. 6013(d)(3). "One of the fundamental characteristics of joint and several liability is that the

obligee * * * may proceed against the obligors separately and may obtain separate judgments against each." Dolan v. Commissioner, 44 T.C. 420, 427 (1965).

"Prior to 1971, a spouse was held strictly liable for tax deficiencies resulting from omissions and deductions attributable solely to the other spouse, even if the 'innocent spouse' knew nothing of the erroneous items." Guth v. Commissioner, 897 F.2d 441, 442-443 (9th Cir. 1990). In order to mitigate the effect of the harsh rule holding both spouses jointly and severally liable for joint return taxes in all circumstances, Congress in 1971 enacted former section 6013(e) "to bring government tax collection practices into accord with basic principles of equity and fairness." S. Rept. 91-1537, at 2 (1970), 1971-1 C.B. 606, 607.

Under the original section 6013(e) enacted in 1971, a requesting spouse was entitled to relief from joint return liability only for the nonrequesting spouse's failure to report income. In 1984, former section 6013(e) was amended to cover any "substantial understatement of tax" whether arising from an omission of income, or an erroneous deduction, exclusion, or credit.

In 1998, Congress repealed former section 6013(e) and enacted section 6015. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734.

Section 6015 was given retroactive effect with respect to any liability for tax remaining unpaid as of July 22, 1998.  See id. sec. 3201(g)(1), 112 Stat. 740.  To the extent that the relief petitioner requested relates to taxes that had not been paid as of that date,[5] section 6015 is applicable.

Section 6015 contains three alternative grounds for relief from joint and several liability.  First, section 6015(b) provides for traditional relief from joint and several liability following the model of former section 6013(e).  Second, section 6015(c) provides for an allocation of liability as if the spouses had filed separate returns.  Finally, section 6015(f) provides for relief on other equitable grounds, but only if section 6015(b) and (c) does not apply.[6]

Issue 1.  Petitioner's Right to Section 6015(b) Relief

Section 6015(b)(1) provides for relief from joint and several liability on a joint return if five elements are met:

---

[5]Petitioner stated at trial:  "I am not trying to seek relief from my income during those two years.  I am seeking relief for the--an investment that I had no knowledge of, and I had no idea what that was.  I am not--like I said, I am not seeking relief for the income for those two years."  According to petitioner's testimony, respondent has offset one of petitioner's subsequent year tax refunds.  Petitioner would not be entitled under sec. 6015(c) to a refund of any amount she had previously paid.  Sec. 6015(g)(3).  The amount she had previously paid, however, should be taken into account in determining her liability under sec. 6015(c) on a separate return basis.

[6]Petitioner did not request relief under sec. 6015(f) in her petition or in any of her other filings with this Court.

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

Respondent's determination states that petitioner's request for relief from joint and several liability is denied because petitioner failed to show her "lack of knowledge of the understatement." While respondent's determination appears to have focused on petitioner's actual knowledge rather than her "reason to know", petitioner bears the burden of proving all of the elements entitling her to relief. Mueller v. Commissioner, T.C. Memo. 2001-178; Kalinowski v. Commissioner, T.C. Memo. 2001-21 ("Petitioner carries the burden of proof as to each of these elements."); In re French, 242 Bankr. 369, 377 n.5 (Bankr. N.D. Ohio 1999) (applying prior law under former section 6013(e) to determine burden of proof under section 6015). Petitioner

therefore must show both that she lacked actual knowledge of the understatement and that she had no "reason to know" of the understatement.

Because an appeal in this case would lie in the Court of Appeals for the Ninth Circuit, we are bound by Ninth Circuit law. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

The principal Ninth Circuit case interpreting the "not know, and had no reason to know" requirement[7] in connection with an erroneous deduction is Price v. Commissioner, 887 F.2d 959, 962 (9th Cir. 1989).  Charles and Patricia Price filed a joint return in which they deducted $90,000 in alleged exploration and development expenses passed through to them from a Colombian gold mining operation formed by Charles.  The $90,000 deduction was taken against total income of $103,000.  After making a cursory review of the tax return, Patricia noticed the large deduction and questioned Charles about the legitimacy of the deduction.

---

[7]Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), arose under former sec. 6013(e) rather than under current sec. 6015(b). The same standard applies under the sec. 6015(b) knowledge test. Former sec. 6013(e)(1)(C) provided "the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement". Current sec. 6015(b)(1)(C) provides "the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement".  The only meaningful change in the language was to eliminate the requirement that the understatement be "substantial".  The "did not know, and had no reason to know" language is the same in both provisions.

Charles assured her that the deduction was proper and had been approved by the certified public accountant who prepared and signed the return.

After the Commissioner disallowed the deduction and Charles and Patricia were divorced, Patricia claimed relief from joint and several liability under former section 6013(e). Following the law in omitted income cases, the Tax Court denied Patricia's claim for relief from joint and several liability because Patricia was aware of the existence of the transaction underlying the deduction--the existence of her husband's gold mining investment.

The Court of Appeals for the Ninth Circuit reversed and granted Patricia's request for relief from joint and several liability. The Court of Appeals held that in erroneous deduction cases, unlike omitted income cases, the requesting spouse's mere knowledge of the existence of the transaction underlying the deduction is not enough to deny relief. In order to be denied relief, the requesting spouse must know or have reason to know "that the deduction would give rise to a substantial understatement." Id. at 963. While ignorance of the legal or tax consequences of an item which gives rise to a deficiency is no defense, something more than mere knowledge of the transaction is required:

> Thus, if a spouse knows virtually all of the facts
> pertaining to the transaction which underlies the

substantial understatement, her defense in essence is premised solely on ignorance of law.  Id.  In such a scenario, regardless of whether the spouse possesses knowledge of the tax consequences of the item at issue, she is considered as a matter of law to have reason to know of the substantial understatement and thereby is effectively precluded from establishing to the contrary. * * *  [Id. at 964.]

Where the requesting spouse lacks such pervasive knowledge of the facts of the underlying transaction, the Court of Appeals concluded that the trier of fact must determine whether the requesting spouse had sufficient knowledge of the facts to make denial of relief appropriate:

A spouse has "reason to know" of the substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement. * * * Factors to consider in analyzing whether the alleged innocent spouse had "reason to know" of the substantial understatement include: (1) the spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. * * *  [Id. at 965; citations omitted.]

Even though she had limited knowledge of the facts underlying the transaction giving rise to the deduction, the Court of Appeals found, on the basis of the size of the deduction in relation to the taxpayers' joint income, that Patricia had sufficient knowledge "such that a reasonably prudent taxpayer in her position would be led to question the legitimacy of the deduction."  Id.   However, because Patricia questioned Charles

about the deduction and obtained sufficient assurance that the deduction was appropriate, she satisfied her duty of inquiry. Id.   Therefore, the Court of Appeals granted Patricia's claim for relief from joint and several liability.   The Court of Appeals specifically distinguished other cases in which the requesting spouse failed to question the legitimacy of the deduction:  "We therefore distinguish this case from one in which the tax court denied relief to a spouse seeking relief who simply ignored a large deduction and who refused to make inquiries." Id.

In the case at hand, we are satisfied that petitioner did not have actual knowledge of the facts giving rise to the disallowance of the losses.   There was conflicting testimony concerning whether petitioner had any involvement in the Shorthorn partnership.   Intervenor testified that petitioner had knowledge and was involved in the decision to participate in the Shorthorn partnership.   Conversely, petitioner denied that she had any involvement in or knowledge of the investment, claiming that she left the matter entirely in intervenor's hands.

Even if we accepted intervenor's testimony as true, we would find that neither petitioner nor intervenor knew the facts that made the flowthrough losses from the partnership unallowable as deductions on their joint returns.   Indeed, neither petitioner nor intervenor understood the nature of their investment or the

claimed basis for their deductions. They put their trust entirely in the Hoyt organization to determine the basis for, propriety of, and amount of their deductions.

Moreover, the documentary evidence supports petitioner's contention that she had no involvement with the Shorthorn partnership. Intervenor signed all of the documents offered in evidence; petitioner signed none of them. Intervenor asserted in his intervention papers that petitioner attended a meeting with the Hoyt organization, but his actual testimony on this point was uncertain:

> A: As far as I know she went with me to
> the one and only meeting I went to.

> Court: As far as you know, or as far as you recall.

> A: As far as I recall.

Petitioner denied ever attending a meeting or knowing any of the people involved in the Hoyt matter. On balance, we believe petitioner has met her burden of proving by a preponderance of the evidence that she had no involvement with the Shorthorn partnership. She clearly lacked actual knowledge of the facts giving rise to the understatement.

However, petitioner had "reason to know" of the understatement. The partnership losses were simply too large in relation to petitioner and intervenor's joint income for a reasonably prudent person with petitioner's level of education to ignore. Petitioner and intervenor's joint Federal income tax

return for 1985 showed wages of $30,203 and Shorthorn partnership losses of $20,180 and for 1986 showed wages of $36,943 and Shorthorn partnership losses of $26,234.  A reasonably prudent taxpayer would have questioned deductions of this size in relation to their income.  "Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability."  Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.

Unlike the situation in Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), where the requesting spouse questioned the deduction and received assurances regarding the propriety of the deduction, petitioner failed to make inquiries.  The court in Price distinguished cases, like the one at hand, where "a spouse seeking relief * * * simply ignored a large deduction and * * * refused to make inquiries."  Id. at 966; see also Reser v. Commissioner, 112 F.3d 1258, 1267-1268 (5th Cir. 1997) ("Tax returns setting forth 'dramatic deductions' will generally put a reasonable taxpayer on notice that further investigation  is warranted.  A spouse who has a duty to inquire but fails to do so may be charged with constructive knowledge of the substantial understatement and thus precluded from obtaining innocent spouse

relief"), affg. in part and revg. in part T.C. Memo. 1995-512; Hayman v. Commissioner, supra at 1262 (no relief where requesting spouse failed to read return); Kalinowski v. Commissioner, T.C. Memo. 2001-21 (applying Price standard to section 6015 cases); Levin v. Commissioner, T.C. Memo. 1987-67 (denying relief from joint and several liability where requesting spouse failed to make inquiry). Under the circumstances, petitioner has failed to meet her burden of showing that a reasonable person in her position would not have reason to know of the understatement. Therefore, petitioner is not entitled to relief from joint and several liability under section 6015(b).

Issue 2. Petitioner's Right to Section 6015(c) Relief

Respondent has also denied petitioner's claim for relief under section 6015(c). Petitioner was eligible to make an election under section 6015(c) because she was no longer married to intervenor at the time she filed her request for relief from joint and several liability. See sec. 6015(c)(3)(A)(i)(I).

Upon the satisfaction of certain conditions, section 6015(c) relieves the requesting spouse of liability for the items making up the deficiency that would have been allocable solely to the nonrequesting spouse if the spouses had filed separate tax returns for the taxable year. Sec. 6015(d)(1), (3)(A). Petitioner has the burden of proving which items would not have been allocated to her if the spouses had filed separate returns.

See <u>Culver v. Commissioner</u>, 116 T.C. 189 (2001) (burden of proof under section 6015 normally on the taxpayer, except under section 6015(c)(3)(C) actual knowledge test).

Petitioner has met her burden of establishing that the items making up the deficiency are attributable to intervenor and not to her. Petitioner established by a preponderance of the evidence that she had no involvement in the decision to invest in the Shorthorn partnership or to have the Hoyt organization prepare their joint income tax returns. She signed none of the documents for the Shorthorn partnership offered in evidence. There was no firm credible evidence that petitioner had any involvement with the Hoyt organization. Intervenor admitted that he was the one who was introduced to the Hoyt organization by a coworker. He admitted to attending an introductory Hoyt meeting and to deciding to participate in the Shorthorn partnership. He delivered his and petitioner's tax information to the Hoyt organization to prepare their tax returns. The deduction of excessive losses from the Shorthorn partnership is therefore attributable entirely to intervenor's activities and his partnership interest and would have been allocated entirely to him if the spouses had filed separate returns.[8] Petitioner is

---

[8]Determinations made under sec. 6015 are made without regard to community property laws. Sec. 6015(a) (flush language). Therefore, petitioner's potential interest in the Shorthorn partnership as a result of the community property laws is ignored
(continued...)

therefore entitled to relief under section 6015(c) from joint and several liability for the deficiency, except to the extent that one or more of the exceptions apply.

Section 6015(c) contains three exceptions under which items initially attributed to the nonrequesting spouse must also be attributed to the requesting spouse.  These are the "actual knowledge" exception in section 6015(c)(3)(C), the "benefit" exception in section 6015(d)(3)(B), and the "fraud" exception in section 6015(d)(3)(C).  There are no facts to suggest that the "fraud" exception applies here.

A.   The Actual Knowledge Exception

The first exception to the separate return rule is for items initially allocable solely to the nonrequesting spouse of which the requesting spouse has actual knowledge.  Sec. 6015(c)(3)(C).  If petitioner had "actual knowledge * * * of any item giving rise to a deficiency (or portion thereof)" at the time she signed the return, that item must be allocated to her.  See sec. 6015(c)(3)(C).

Respondent claims that no relief is available to petitioner under section 6015(c) because petitioner had "actual knowledge * * * of the items giving rise to the deficiency."  Respondent

_____

[8](...continued)
for the purpose of determining whether any item giving rise to the deficiency should be attributed to her under the separate return standard.

has the burden of proving by a preponderance of the evidence that petitioner, at the time of signing the returns, had actual knowledge of the items giving rise to the deficiency that otherwise would have been allocated solely to intervenor under the separate return rule. See sec. 6015(c)(3)(C) ("If the Secretary demonstrates * * * actual knowledge"); Culver v. Commissioner, supra.

In King v. Commissioner, 116 T.C. 198, 203 (2001), this Court considered the standard for "actual knowledge of the item giving rise to the deficiency" applicable to erroneous deductions under section 6015(c)(3)(C). There, the taxpayer filed a joint return with her husband, Curtis Freeman, and claimed significant losses from Freeman's cattle ranching operations. The taxpayer knew that the cattle ranch was not profitable but did not know that Freeman lacked a profit motive for engaging in the activity, which was the critical fact underlying the Commissioner's determination that Freeman was not entitled to deduct the losses under section 183. This Court held that the taxpayer was entitled to relief under section 6015(c), even though the taxpayer was aware of the activity giving rise to the erroneous deduction (the cattle ranching activity) because she did not know the predicate facts causing the losses to be nondeductible (i.e. her husband's lack of a profit motive):

> The question in this case, therefore, is not whether petitioner knew the tax consequences of a not-

for-profit activity but <u>whether she knew or believed that her former spouse was not engaged in the activity for the primary purpose of making a profit</u>. Thus, in determining whether petitioner had actual knowledge of an improperly deducted item on the return, more is required than petitioner's knowledge that the deduction appears on the return or that her former spouse operated an activity at a loss. Whether petitioner had the requisite knowledge is an essential fact respondent was required to establish under section 6015(c)(3)(C). Respondent failed in this regard. * * * [<u>Id.</u> at 205; emphasis added.]

Applying the factual standard of <u>King</u> to the case at hand, the losses from the Shorthorn partnership would be allocated to petitioner only if she knew the factual basis for the denial of the deductions. According to respondent:

the factual basis for the disallowed deduction in the Hoyt tax shelter cases generally centers on the lack of animals to sustain the deductions taken and an overvaluation of the animals that were available. * * * Respondent concedes that neither he nor Mr. Rasberry has established that petitioner had actual knowledge of the factual circumstances giving rise to the disallowance of the partnership losses. * * *

Respondent argues that the principle of <u>King v. Commissioner</u>, <u>supra</u>, should not be extended to limited partnership investments because both spouses would often be eligible for section 6015(c) relief, since neither would have actual knowledge of the factual basis for the disallowance of the partnership losses. That is not how section 6015(c) works. Only items that are not attributable to the requesting spouse under section 6015(d) are subject to the "actual knowledge" exception in section 6015(c)(3)(C). Since the erroneous deductions here

(the Shorthorn partnership losses) are attributable to intervenor's activities and his partnership interest, he cannot avoid his liability for the deficiency by filing a request for relief under section 6015(c), even if he lacked knowledge of the facts giving rise to the deduction.

It is appropriate to apply the King standard to limited partnership investments made by the nonrequesting spouse in allocating liabilities based on the "separate return" standard in section 6015(c). The "actual knowledge" test in section 6015(c)(3)(C) is an exception to the general rule under which items resulting in the deficiency are allocated as if the spouses had filed separate returns. The statute makes no distinction between active and passive investments, and we see no legal basis and no policy reason for creating a judicial distinction. Therefore, the Shorthorn partnership losses, which are attributable solely to intervenor's activities and partnership interest, should not also be attributed to petitioner under section 6015(c)(3)(C) merely because both petitioner and intervenor, rather than just petitioner, lacked actual knowledge of the facts giving rise to the disallowance of the losses.

B.   The Tax Benefit Exception

Section 6015(d)(3)(B) contains an exception to the general rule that items are to be attributed to the spouses in the same manner as they would have been had the spouses filed separate

returns.  Under this exception, items giving rise to a deficiency that are attributable to the nonrequesting spouse must also be attributed to the requesting spouse if the requesting spouse received a "tax benefit" from the items on the joint return.  The legislative history explains the operation of the "tax benefit" exception:

> If the deficiency arises as a result of the denial of an item of deduction or credit, the amount of the deficiency allocated to the spouse to whom the item of deduction or credit is allocated is limited to the amount of income or tax allocated to such spouse that was offset by the deduction or credit.  The remainder of the liability is allocated to the other spouse to reflect the fact that income or tax allocated to that spouse was originally offset by a portion of the disallowed deduction or credit.  [H. Conf. Rept. 105-599, at 252 (1998), 1998-3 C.B. 747, 1006.]

Both the conference committee report and the proposed regulations contain an example under which an erroneous deduction attributable to the nonrequesting spouse (in excess of the nonrequesting spouse's separate return income) reduces the requesting spouse's hypothetical separate return tax liability, resulting in a tax benefit to the requesting spouse.  See id.; sec. 1.6015-3(d)(5) Example 6, Proposed Income Tax Regs., 66 Fed. Reg. 3900 (Jan. 17, 2001).

In the case at hand, petitioner would have been required to pay tax on her share of the income reported on each joint return had she filed a separate return.  Because of the erroneous Shorthorn partnership deductions attributed to intervenor,

petitioner did not pay any taxes on her separate return share of the income. Therefore, she received a tax benefit from intervenor's erroneous deductions that must be taken into account in determining the extent to which petitioner is entitled to relief from joint and several liability.

In order to determine the relief to which petitioner is entitled, the parties must determine the proportion of the erroneous Shorthorn partnership deduction that resulted in a tax benefit to petitioner. The Shorthorn partnership deduction is first attributed to intervenor to the extent of intervenor's separate return income. The balance of the deduction benefited petitioner by reducing petitioner's separate return income. Petitioner is liable for the proportion of the deficiency equal to the proportion of the total Shorthorn partnership deduction which benefited her. For example, if petitioner benefited from 25 percent of the Shorthorn partnership deduction, she would be liable for 25 percent of the deficiency and entitled to relief from joint and several liability for 75 percent of the deficiency. Any amounts previously collected from petitioner and intervenor should be appropriately credited after determining petitioner's liability for the deficiency.

To give effect to the foregoing,

                              <u>Decision will be entered in</u>

<u>accordance with Rule 155</u>.