T.C. Memo. 2009-237

UNITED STATES TAX COURT

OWEN E. SMITH, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16708-07.              Filed October 19, 2009.

Owen E. Smith, pro se.

Dennis R. Onnen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  This case arises under section 6015[1] from
petitioner's request for relief from joint and several liability

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

for unpaid Federal income tax liabilities for 2001, 2002, 2003, and 2004 (years at issue). Respondent determined petitioner was not entitled to relief. The issue for decision is whether petitioner is entitled to relief from joint and several liability pursuant to section 6015(b) or, in the alternative, under section 6015(f). As explained herein, we find petitioner is not entitled to relief under either subsection (b) or subsection (f).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time he filed his petition, petitioner resided in Missouri.

### Personal Background

Petitioner graduated from Central High School in Kansas City, Missouri, and did not pursue further education. He served a 5-year apprenticeship as a plumber and later became a pipe fitter for General Motors. In 1977 he took an income tax preparation course from H & R Block and prepared tax returns for them for 2 years. In 1996 petitioner began working for the Internal Revenue Service (IRS) as a GS-3 tax examiner. In 1999 petitioner became an IRS customer service representative and assisted taxpayers who had questions regarding their tax accounts. For the past 3 years petitioner served as a full-time union representative within the IRS.

Petitioner married Tressie M. Lyman-Smith (Ms. Lyman) in 1999. Before and during her marriage to petitioner, Ms. Lyman owned and operated a restaurant known as Steak'M Take'M, with which petitioner had no involvement. However, petitioner prepared the couple's joint income tax returns, including the Schedules C, Profit or Loss From Business, for Ms. Lyman's restaurant operations for each of the years at issue using figures Ms. Lyman gave him. The losses reported on Schedules C for 2001, 2002, and 2003 were $35,593, $32,662, $23,570, respectively, and the couple reported a $7,214 profit on Schedule C for 2004.

Before the years at issue, petitioner opened bank accounts at a local credit union in which he deposited his individual earnings. In 2000 or 2001 petitioner gave Ms. Lyman signature authority for his accounts, and Ms. Lyman placed her separate restaurant deposits for 2001 and 2002 therein. On June 3, 2003, Ms. Lyman opened separate accounts yet continued to place the bulk of her business deposits into the couple's joint accounts.[2]

Notice of Deficiency and Procedural Background

On April 24, 2007, respondent issued a notice of deficiency to petitioner and Ms. Lyman. In the notice of deficiency respondent reconstructed Schedule C gross receipts using the bank

---

[2]During 2003 and 2004 Ms. Lyman deposited 88 percent of her business deposits into the joint accounts and the other 12 percent in her separate accounts.

deposits and cash expenditures method and determined there were omissions of gross receipts for 2001, 2002, 2003, and 2004 of $42,454, $48,305, $70,784, and $19,212, respectively.

Ms. Lyman filed a separate Tax Court petition at docket No. 16661-07 in response to the notice of deficiency. As a result of the documentation provided in that case, the proposed deficiencies were reduced and the accuracy-related penalty under section 6662 was substituted for the fraud penalty under section 6663 for each year. The revised deficiencies for 2001, 2002, 2003, and 2004 are $5,450, $12,228, $7,747, and $4,789, respectively, and the penalties under section 6662 for 2001, 2002, 2003, and 2004 are $1,090, $2,334, $1,533, and $954.40, respectively. The revised deficiency figures are based almost entirely on unreported Schedule C gross receipts for 2001, 2002, 2003, and 2004 of $42,454, $48,305, $40,122, and $17,000, respectively.

## OPINION

When a husband and wife file a joint Federal income tax return, they are jointly and severally liable for the amount of tax shown on the return or found to be owed. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, a spouse may qualify for relief from joint and several liability under section 6015(b), (c), or (f) if various requirements are met. Petitioner and Ms. Lyman were married as of the beginning

of the trial, disqualifying petitioner from potential relief under 6015(c). However, petitioner contends he qualifies for full relief from joint liability under 6015(b) or, in the alternative, that he is entitled to equitable relief under section 6015(f).

Our jurisdiction to review petitioner's request for relief is conferred by section 6015(e), which allows a spouse who has requested relief from joint and several liability to contest the Commissioner's denial of relief by filing a timely petition in this Court.

I.  Relief From Joint and Several Liability Under Section 6015(b)

Section 6015(b)(1) authorizes the Commissioner to grant relief from joint and several liability for tax (including interest, penalties, and other amounts) if the taxpayer requesting relief satisfies each of the following five requirements of subparagraphs (A) through (E):

> (A) A joint return has been made for a taxable year;
>
> (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;
>
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
>
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other

individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

The five requirements of section 6015(b)(1) are stated in the conjunctive. Furthermore, except as provided by section 6015, the requesting spouse bears the burden of proving that he satisfies each of these five requirements. See Rule 142(a); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). If the requesting spouse fails to meet any one of the five requirements, he fails to qualify for relief. Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Respondent does not dispute that petitioner satisfies three elements of section 6015(b)(1); namely, those regarding the filing of a joint return, the attribution of an understatement of tax to an erroneous item of the nonrequesting spouse, and timely election under section 6015(b)(1)(A), (B), and (E), respectively. Thus, we consider only whether petitioner satisfies the remaining two elements of section 6015(b)(1).

A.   Section 6015(b)(1)(C)

The first element, section 6015(b)(1)(C), requires that in signing the return, the individual seeking relief did not know

and had no reason to know of the understatement.[3]  A requesting

spouse has knowledge or reason to know of an understatement if he

actually knew of the understatement or if a reasonable person in

similar circumstances, at the time he signed the return, could be

expected to know that the return contained an understatement.

Sec. 1.6015-2(c), Income Tax Regs.

Petitioner has shown that he did not know and had no reason

to know of the understatement attributable to Steak'M Take'M

because he had no control over the restaurant's finances or

knowledge of its operations.  Consequently, we must decide

whether, on the dates he signed the returns, petitioner had

reason to know that the returns understated the tax liabilities

for those years.

A requesting spouse is considered to have reason to know in

this context if "a reasonably prudent taxpayer in his or her

position, at the time he or she signed the return, could be

expected to know that the return contained an understatement or

that further investigation was warranted."  Butler v.

Commissioner, supra at 283; see also Park v. Commissioner, 25

F.3d 1289, 1293 (5th Cir. 1994), affg. T.C. Memo. 1993-252.

Hence, the spouse seeking relief may have a duty of inquiry with

---

[3]"The requirement in section 6015(b)(1)(C) * * * is
virtually identical to the same requirement of former section
6013(e)(1)(C); therefore, cases interpreting former section
6013(e) remain instructive to our analysis."  Doyel v.
Commissioner, T.C. Memo. 2004-35.

regard to the return.  Butler v. Commissioner, 114 T.C. at 283-284.

This duty of inquiry is a subjective test, and its focus is on the individual seeking innocent spouse relief.  Id. at 284. It recognizes that the suspicions of a spouse who is a lawyer or accountant should be triggered more easily than those of someone without such training.  Compare Ohrman v. Commissioner, T.C. Memo. 2003-301 (requesting spouse was a lending officer at two large banks who controlled the family finances), affd. 157 Fed. Appx. 997 (9th Cir. 2005), with Pietromonaco v. Commissioner, 3 F.3d 1342, 1345-1347 (9th Cir. 1993) (requesting spouse was stay-at-home mom with a high school education), revg. T.C. Memo. 1991-472.  In applying the foregoing "reason to know" standard, the following factors are considered relevant.

### 1.  Education Level

We note that petitioner's education ended with high school, and he never pursued college or coursework in accounting, finance, or mathematics.  However, petitioner has some understanding of the income tax system, as evidenced by his enrollment in a tax preparation course and his preparation of returns for H & R Block for 2 years.  Furthermore, petitioner has been an employee of the IRS since 1996 and presumably has had additional exposure to the tax system.

### 2.   Involvement in Financial Affairs

Petitioner credibly demonstrated that his involvement in the family's financial affairs was negligible.  Ms. Lyman was given the primary responsibility of managing all living expenses, while petitioner simply direct-deposited his check and made occasional purchases with his debit card.  However, petitioner was the primary account holder on the accounts to which Ms. Lyman deposited the bulk of her business proceeds for the years at issue.  Accordingly, petitioner had full access to the monthly financial statements and could review the proceeds of Ms. Lyman's business transactions.

### 3.   Large or Lavish Expenses

The record shows that petitioner made mostly minor purchases during the years at issue.  The exception is petitioner's purchase in 2000 of a used Ford SUV.  However, petitioner credibly testified that this vehicle was purchased primarily with insurance proceeds that he received from an auto accident claim settlement.  The record is devoid of any additional information regarding potential large or lavish expenses petitioner made during the years in question.

### 4.   Nonrequesting Spouse's Evasion or Deceit

The last factor is whether Ms. Lyman was evasive or deceitful regarding the couple's finances.  As noted, petitioner was the primary account holder on most of the accounts in which

Ms. Lyman made business deposits for the years at issue. The record shows that 100 percent of her business deposits in 2001 and 2002 and 88 percent of her business deposits in 2003 and 2004 were made to the accounts in petitioner's name, with only marginal amounts being deposited into Ms. Lyman's separate accounts. Consequently, petitioner had access to the accounts and oversight of the couple's finances. Further, petitioner presents no evidence to show that the deficiency was the result of concealment or deceit on the part of Ms. Lyman.

### 5. Duty of Inquiry

Taking all factors into consideration, we must decide whether a reasonably prudent taxpayer in petitioner's position would have had reason to know or a duty to inquire whether income was omitted from his joint returns. A spouse may have a duty to inquire if he or she knows enough facts so as to be placed on notice of the possibility of a substantial understatement of tax. Guth v. Commissioner, 897 F.2d 441, 444-445 (9th Cir. 1990), affg. T.C. Memo. 1987-522. A joint tax return reporting a large deduction that significantly reduces a couple's tax liability generally puts the taxpayer who joins in filing the return on notice that the return may contain an understatement. See Levin v. Commissioner, T.C. Memo. 1987-67. Consequently, the requesting spouse is deemed to have constructive knowledge of the understatement if she fails to inquire. See Von Kalinowski v.

Commissioner, T.C. Memo. 2001-21 (requesting spouse found to possess constructive knowledge of understatement where income of $370,263 was offset by losses of $228,133).

Petitioner and Ms. Lyman's tax returns reported large deductions that significantly reduced their joint tax liabilities during the years at issue. Because petitioner prepared and signed those returns, he would have noticed the net losses and resulting deductions repeatedly claimed for Ms. Lyman's business. Presumably, such large losses, caused by understated gross receipts, over a period of years would cause him to question how he and Ms. Lyman were able to maintain their standard of living. Consequently, petitioner could be expected to know that the returns contained understatements, thus raising his duty to inquire. See Levin v. Commissioner, supra.

Petitioner prepared the Schedules C of the returns for the years at issue by entering the numbers provided by Ms. Lyman. However, a taxpayer who files a joint return with his spouse may not turn a blind eye to the return and thereby avoid the duty to inquire. Id.; see also McCoy v. Commissioner, 57 T.C. 732, 734 (1972). Moreover, a taxpayer who prepares a return is not relieved of the duty to prepare an accurate return if the taxpayer relies on summarized information provided by the taxpayer's spouse when information upon which the summary is

based is available to the taxpayer.  <u>Charlton v. Commissioner</u>,
114 T.C. 333, 340 (2000).

Petitioner's testimony indicates that he simply relied on
the numbers Ms. Lyman provided and failed to investigate or
inquire as to their origin or accuracy.  As a result of his
failure to fulfill his duty to inquire, petitioner is deemed to
have constructive knowledge of the understatements on the
returns.  A reasonably prudent person with experience filing a
return would have questioned repeated deductions and net losses
of such magnitude in the absence of a diminished standard of
living.  See, e.g., <u>Mora v. Commissioner</u>, 117 T.C. 279, 289
(2001).  Furthermore, had petitioner investigated the bank
statements for the accounts to which his name was affixed, he
would have noticed that his account balances did not correspond
to the sizable losses he claimed on his return for each of the
years at issue.

We conclude that petitioner, under the facts and
circumstances of this case, had a duty to inquire regarding the
gross receipts omitted from his returns.  Because he failed to
satisfy his duty of inquiry, we find that he had reason to know
of the understatements of tax under section 6015(b)(1)(C).  See
<u>Id.</u>; <u>Charlton v. Commissioner</u>, <u>supra</u>; <u>Hayman v. Commissioner</u>,
T.C. Memo. 1992-228, affd. 992 F.2d 1256, 1262 (2d Cir. 1993).

B.    Section 6015(b)(1)(D)

The second of the two remaining elements takes into account all the facts and circumstances in deciding whether it is inequitable to hold the relief-seeking spouse liable for a deficiency.  Sec. 6015(b)(1)(D).[4]  The two material factors most often cited and considered are whether there has been a significant benefit to the spouse claiming relief and whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse.  Alt v. Commissioner, 119 T.C. at 314; Jonson v. Commissioner, 118 T.C. at 119.

There is no allegation of concealment, overreaching, or any other wrongdoing on the part of Ms. Lyman.  However, there is evidence that petitioner benefited substantially from the omissions of income on the returns.  The overstated losses generated by Ms. Lyman's activities completely offset petitioner's income in 2001 and 2002 and most of his income in 2003.  Consequently, petitioner and Ms. Lyman received significant tax refunds during those years.

We conclude, by a preponderance of the evidence, that it would not be inequitable to hold petitioner liable for the

---

[4]Because this requirement is almost identical to the requirement of former sec. 6013(e)(1)(D), cases interpreting that section remain instructive to our analysis.  Butler v. Commissioner, 114 T.C. 276, 283 (2000).

deficiencies for the years at issue.  Thus, we sustain respondent's determination denying petitioner relief from joint and several liability under section 6015(b)(1).

II.  Relief From Joint and Several Liability Under Section 6015(f)

Relief may be granted from joint and several liability under 6015(f) if "(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and (2) relief is not available to such individual under subsection (b) or (c)".  This Court has jurisdiction to determine whether a taxpayer is entitled to equitable relief under section 6015(f).  Sec. 6015(e)(1)(A); see also Farmer v. Commissioner, T.C. Memo. 2007-74.  Our determination is made in a trial de novo.  Porter v. Commissioner, 130 T.C. 115, 117 (2008).

The Commissioner prescribed procedures in Rev. Proc. 2003-61, 2003-2 C.B. 296, that IRS personnel must use to determine whether a requesting spouse qualifies for relief under section 6015(f).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, lists threshold conditions which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Respondent concedes that petitioner meets each of the threshold conditions.

Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, provides that once the threshold conditions have been satisfied, equitable

relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable.  Rev. Proc. 2003-61, sec. 4.03, lists several factors that the Commissioner, and ultimately this Court, may consider in determining whether to grant equitable relief under section 6015(f).  No single factor is determinative, all factors are to be considered and weighed appropriately, and the listing of factors is not intended to be exhaustive.  See Washington v. Commissioner, 120 T.C. 137, 148 (2003); Jonson v. Commissioner, supra at 125.  Our analysis of the relevant facts and circumstances is set forth below.

A.    Marital Status

Petitioner and Ms. Lyman were married when petitioner sought relief.  This factor is neutral.[5]

B.    Economic Hardship

This factor favors relief if payment of the owed taxes would cause the requesting spouse to suffer economic hardship.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298.  The Commissioner considers the taxpayer to suffer economic hardship if payment of the tax would prevent the taxpayer from meeting reasonable basic living expenses.  Sec. 301.6343-1(b)(4)(i),

---

[5]In analyzing such factors as the taxpayer's marital status, whether the taxpayer would suffer hardship, and whether the taxpayer has complied with income tax laws in subsequent years, our inquiry is directed to the taxpayer's status at the time of trial.

Proced. & Admin. Regs.; Rev. Proc. 2003-61, sec. 4.02(1)(c), 4.03(2)(a)(ii), 2003-2 C.B. at 298.  As the record does not indicate that petitioner would experience economic hardship from paying the tax, this factor favors respondent.

Petitioner argues that, because he is an IRS employee, he could lose his employment under the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 1203(b)(9), 112 Stat. 721.  This section authorizes the Commissioner to terminate the employment of an IRS employee if there is a final administrative or judicial determination that the employee has committed, in the performance of his official duties, an act or omission described in RRA 1998 section 1203(b), among which is a "willful understatement of Federal tax liability, unless such understatement is due to reasonable cause and not to willful neglect".  Id. sec. 1203(b)(9).  This Court has no occasion to decide whether petitioner willfully understated his tax liabilities within the meaning of RRA 1998 section 1203(b)(9), and he has not called to our attention any final administrative or judicial determination that he has committed such an act.  Consequently, we consider his reliance on RRA 1998 section 1203 misplaced.

C.   Knowledge or Reason To Know

With regard to an income tax liability resulting from a deficiency, we are less likely to grant relief under section

6015(f) if the requesting spouse knew or had reason to know of the item giving rise to the deficiency.

We have already attributed to petitioner constructive knowledge of the understated gross receipts giving rise to the tax deficiencies. See supra p. 12. Thus, this factor favors respondent.

D. Nonrequesting Spouse's Legal Obligation To Pay

We conclude that this factor does not apply because petitioner and Ms. Lyman are not divorced. See Ferrarese v. Commissioner, T.C. Memo. 2002-249; see also Washington v. Commissioner, supra at 148-149.

E. Significant Benefit

Receipt by the requesting spouse, either directly or indirectly, of a significant benefit in excess of normal support from the unpaid liability or the item giving rise to the deficiency weighs against relief. Lack of a significant benefit beyond normal support weighs in favor of relief. Normal support is measured by the circumstances of the particular parties. Estate of Krock v. Commissioner, 93 T.C. 672, 678-679 (1989).

As discussed previously, we conclude that petitioner significantly benefited, beyond the receipt of normal support, from the omission of income and that this factor favors respondent. See supra p. 13.

F.    <u>Compliance With Income Tax Laws</u>

Respondent concedes that petitioner has complied with income tax laws in all subsequent years.  Even for the years at issue, petitioner promptly filed returns.  This factor favors petitioner.

G.    <u>Conclusion</u>

The only factor favoring relief is that petitioner has complied with all tax laws.  This factor is strongly outweighed by petitioner's failure to show economic hardship, his inability to demonstrate that he had no reason to know of items giving rise to the deficiencies, and his failure to show he did not receive a significant economic benefit.

On the basis of the above, we find that petitioner has failed to carry his burden of proving that he is entitled to relief from joint and several liability under section 6015(f).  In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.