118 T.C. No. 6


UNITED STATES TAX COURT


DAVID C. JONSON AND ESTATE OF BARBARA J. JONSON, DECEASED,
DAVID C. JONSON, SUCCESSOR IN INTEREST, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21648-87.              Filed February 8, 2002.


        H and W filed joint Federal income tax returns for
1981 and 1982 on which they took large deductions
attributable to a tax shelter investment.  R disallowed
the deductions.  W claimed relief from joint liability
under sec. 6013(e), I.R.C., which was repealed and
replaced by sec. 6015, I.R.C.  W died while still
married to and living with H.  Ps concede the
deficiencies but pursue the sec. 6015, I.R.C. claim on
behalf of W.  Ps allege that, although W was aware of
the tax shelter investment, the anticipated tax
savings, and the tax risks, she qualifies for relief
under sec. 6015(b)(1), (c), and (f), I.R.C.  Ps allege
that H, as W's personal representative, is eligible to
elect relief under sec. 6015(c), I.R.C., because, at
the time he filed such election, W was "no longer
married to" H. See sec. 6015(c)(3)(A)(i), I.R.C.

1.  <u>Held</u>:  W had reason to know of the understatement attributable to the disallowed deductions, and, therefore, W is not entitled to relief under sec. 6015(b)(1)(C), I.R.C.

2.  <u>Held</u>, <u>further</u>, it would not be inequitable to hold W liable for the deficiencies in tax, and, therefore, W is not entitled to relief under sec. 6015(b)(1)(D), I.R.C.

3.  <u>Held</u>, <u>further</u>, because W did not satisfy the eligibility requirements of sec. 6015(c)(3)(A)(i), I.R.C., prior to her death, H, as personal representative, is not entitled to elect relief under sec. 6015(c), I.R.C.

4.  <u>Held</u>, <u>further</u>, under the facts and circumstances, R's denial of equitable relief under sec. 6015(f), I.R.C., does not constitute an abuse of discretion.


<u>Declan J. O'Donnell</u>, for petitioners.

<u>Randall L. Preheim</u>, for respondent.


HALPERN, <u>Judge</u>:  By notice of deficiency dated April 14, 1987, respondent determined deficiencies in, and additions to, the Federal income tax liabilities of David C. and Barbara J. Jonson (separately, David or Barbara; together, the Jonsons), as follows:[1]

---

[1]  The petition in this case was filed on July 6, 1987, on behalf of six individuals, including David C. and Barbara J. Jonson.  Pursuant to an order of this Court dated June 12, 1990, such individuals other than the Jonsons were severed as petitioners in this case, and the caption of this case was amended to read "David C. Jonson and Barbara J. Jonson, Petitioners v. Commissioner of Internal Revenue, Respondent".  Barbara died on Mar. 16, 1996, and, upon motion thereafter made by respondent, "Estate of Barbara J. Johnson, Deceased, David C. Jonson, Successor in Interest" was substituted for Barbara as a

(continued...)

| Tax Year Ending Dec. 31 | Deficiency | Sec. 6659 Addition |
|---|---|---|
| 1981 | $32,998 | $9,862 |
| 1982 | 33,504 | 10,038 |

On account of concessions made by the parties (which we accept),[2] the sole issue for our decision is whether Barbara is relieved of any liability for tax pursuant to the provisions of section 6015.[3]

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years at issue, and Rule

---

[1](...continued)
petitioner.

[2] Petitioners have conceded the underlying deficiencies; respondent has conceded that there are no additions to tax; and petitioners have conceded that the deficiencies constitute substantial underpayments attributable to tax-motivated transactions for purposes of computing deficiency interest under sec. 6621(c).

[3] By amendment to petition filed Jan. 6, 1994, the Jonsons raised the affirmative defense that Barbara should be relieved of liability as a so-called innocent spouse under sec. 6013(e). In 1998, sec. 6013(e) was repealed and replaced with sec. 6015. Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 685, 734. The RRA 1998 generally revised and expanded the relief available to joint filers. Moreover, the RRA 1998 gave sec. 6015 retroactive effect in that it was made applicable to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before such date that remained unpaid as of July 22, 1998. RRA 1998 sec. 3201(g)(1), 112 Stat. 740; Corson v. Commissioner, 114 T.C. 354, 359 (2000). Sec. 6015 is thus the proper section under which petitioners should be claiming relief for Barbara. Petitioners, however, did not amend the petition to claim relief from liability under sec. 6015 (rather than sec. 6013(e)). Nevertheless, the trial of this case proceeded on the basis that Barbara's claim was for relief under sec. 6015 rather than for relief under sec. 6013(e). We shall treat that claim as if it had been made in the pleadings. See Rule 41(b)(1).

references are to the Tax Court Rules of Practice and Procedure. For convenience, monetary amounts have been rounded to the nearest dollar.

## FINDINGS OF FACT[4]

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

---

[4] In part, Rule 151 provides as follows:

RULE 151. BRIEFS

   *       *       *       *       *       *       *

   (e) Form and Content:   * * *

   *       *       *       *       *       *       *

   (3)   * * *   In an answering or reply brief, the party shall set forth any objections, together with the reasons therefor, to any proposed findings of any other party, showing the numbers of the statements to which the objections are directed; in addition, the party may set forth alternative proposed findings of fact.

Petitioners have filed an answering brief, but petitioners have failed therein to set forth objections to the proposed findings of fact made by respondent. Accordingly, we must conclude that petitioners have conceded respondent's proposed findings of fact as correct except to the extent that petitioners' proposed findings of fact are clearly inconsistent therewith. See Estate of Freeman v. Commissioner, T.C. Memo. 1996-372; Fein v. Commissioner, T.C. Memo. 1994-370; Estate of Stimson v. Commissioner, T.C. Memo. 1992-242; Cunningham v. Commissioner, T.C. Memo. 1989-260.

Residence

At the time of the petition, the Jonsons resided in Golden, Colorado.

The Joint Returns

For 1981 and 1982 (the audit years), the Jonsons made joint returns of income (the 1981 joint return, the 1982 joint return, and, collectively, the joint returns). Among the attachments to the 1981 joint return is a Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc. – 1981, identifying David as a limited partner in a partnership, Vulcan Oil Technology (Vulcan), and showing, as a "distributive share item", a loss of $75,620. Such loss is further reflected on a Schedule E, Supplemental Income and Loss Schedule, attached to the 1981 joint return and in a composite figure carried from such Schedule E to the first page of the 1981 joint return, where such composite figure is deducted. The Schedule K-1 also shows that David's interest in Vulcan's profits, losses, and capital is 1.415 percent. The facts are similar for 1982, except that the amount of the loss is $71,078 (the losses for 1981 and 1982 being referred to, collectively, as the Vulcan losses).

David prepared the joint returns. Barbara knew that the Vulcan losses were claimed on those returns.

Respondent's Adjustments

Respondent's adjustments giving rise to the deficiencies here in question (sometimes, the deficiencies) result from respondent's disallowances of the Vulcan losses and a small credit (without distinction, the Vulcan losses) claimed on the joint returns. In the notice, respondent explains the disallowances as follows:

> It is determined that you incurred no deductible loss for the taxable years 1981 and 1982 from the Vulcan Oil Technology a partnership in which you own an interest. It has not been established that the partnership incurred any loss for the taxable years 1981 and 1982, nor has it been established that if the partnership did have a loss for the taxable years 1981 and 1982, that you are entitled to deduct any portion of that loss on your income tax return. Accordingly, your taxable income for the years 1981 and 1982 is increased by $75,620.00 and $71,078.00.

After the initiation of this action, and following respondent's prevailing in certain test cases involving investments similar to Vulcan (the test cases),[5] petitioners conceded the deficiencies.

The Jonsons

Barbara was born on March 21, 1930. She received an associate's degree from Colorado Women's College in 1949, a

---

[5] On brief, petitioners identify those cases as follows: Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994); and Acierno v. Commissioner, T.C. Memo. 1997-441, affd. 185 F.3d 861 (3d Cir. 1999).

bachelor's degree in physical education from the University of Colorado in 1952, and a master's degree in gifted and talented education from the University of Denver in 1979.  She was an elementary and high school teacher and a member of the National Science Teachers' Association and the Colorado Association of Science Teachers.  She was also an instructor at the University of Colorado.  After college, in connection with her teaching activities, Barbara attended numerous teacher training sessions. During the audit years, Barbara was employed as a teacher, reporting wages therefrom of $23,602 in 1981 and $27,146 in 1982.

During the audit years, David was a consulting geologist, carrying on that business as a sole proprietor out of the Jonsons' home.  He reported earnings from such business of $85,183 and $99,878, for 1981 and 1982, respectively.  Sometime during the early 1990s, David incorporated his consulting business as Johnson Management, Inc.

For the audit years, in addition to Barbara's wages and David's business income, the Jonsons reported $12,538 and $29,317 for 1981 and 1982, respectively, as interest, dividends, and capital gains.

The Jonsons' Marriage

The Jonsons were married on January 7, 1956.  They lived together as a married couple (and were not legally separated) on March 16, 1996, the date of Barbara's death.

The Jonsons had three children, all of whom were in college during the audit years.  Aside from some unspecified amounts of money from student loans and the children's summer employment, the Jonsons paid for their children's college educations.  For at least a portion of the audit years, they had a Guatemalan exchange student living with them.

Barbara's Estate

Barbara died testate, leaving her entire estate (the estate) to David.  The estate had a value of $365,204, and it consisted primarily of Barbara's retirement savings.  On December 2, 1996, David disclaimed his interest in the estate pursuant to a document that directed that the residual estate "be advanced to their three children in equal shares, in [stock of] Jonson Management Company, Inc." and that he, David, "continue to manage that corporation under his contract".[6]

The Jonsons' Financial Affairs

During the audit years, the Jonsons maintained only one checking account and one savings account, over both of which each had signature authority.  During those years, Barbara reconciled

---

[6]  We note that David's directive regarding Barbara's residual estate appears not to satisfy sec. 2518(b)(4), which provides, in pertinent part, that a "qualified disclaimer" is an "unqualified refusal by a person to accept an interest in property", provided that the disclaimed interest "passes without any direction on the part of the person making the disclaimer". (Emphasis added.)  See also sec. 2046.  Because neither party has raised any issue with respect to sec. 2518(b)(4), we do not further discuss it.

and balanced the bank statements and wrote checks on the checking account (the joint checking account) to pay routine household bills.

Barbara managed her retirement savings. During the audit years, she and David were both partners in a partnership, Continental South Apartments. In 1980, Barbara recommended to David that they sell an apartment house they owned because Barbara thought they were not making money on the investment. David followed her recommendation, and they sold the apartment house in the same year. Neither David nor Barbara made any attempt to deceive the other with regard to his or her respective financial affairs. Barbara participated in financial matters with David, who valued her advice and participation.

Vulcan

Vulcan was a limited partnership formed to invest in technology for the recovery of oil and gas. David invested in Vulcan on October 2, 1981. On that date, he signed the "Vulcan Oil Technology Partners Subscription Agreement" (the subscription agreement), and he delivered to the promoters of Vulcan a check in the amount of $18,750 and two promissory notes in like amounts, which notes he subsequently paid, also by check. All three checks were drawn on the joint checking account. Because she routinely balanced the checkbook, Barbara saw the checks when they cleared.

Although Barbara was not present when David met the promoters of Vulcan and executed the subscription agreement and the notes, she later reviewed the subscription agreement, and David gave her a general explanation of the nature of the investment, expressing the view that it would provide substantial tax savings to them.

The subscription agreement contained the following representation by all those purchasing a limited partnership interest:

> I am aware that the tax effects which may be expected
> by the Partnership are not susceptible to certain
> prediction, and new developments in rulings of the
> Internal Revenue Service, court decisions, or
> legislative changes may have an adverse effect on one
> or more of the tax consequences sought by the
> Partnership.

Request for Section 6015 Relief

On June 13, 2000, David submitted to respondent a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief) (the Form 8857), on behalf of the "Estate of Barbara J. Jonson". David signed the Form 8857: "David C. Jonson (Personal Representative)". Among the attachments to the Form 8857 is a document entitled "Statement of Estate of Barbara J. Jonson * * * by David C. Jonson, Personal Representative", in which David states: "Any financial benefits that resulted to the Jonson family [from Vulcan] went into the general funds administered by David. It eventually contributed to their normal

middle class lifestyle and the education of 3 children and service of credit card and other debt."  Among the attachments to the Form 8857 is a questionnaire answered by Barbara before her death and containing the following question and answer pertaining to her knowledge of the circumstances surrounding David's investment in Vulcan:

> Q.    Explain what you knew about the investment and how
>        you learned about the investment.

> A.    This investment was recommended by a banker friend
>        of my husband.  My husband explained that the
>        investment was entirely legal and proper,
>        according to the lawyers and accountants
>        associated with this tax shelter.  Even the
>        Attorney General for the U.S. at the time, William
>        French Smith, thought it was proper (see attached
>        news clipping).  At the time, IRS tax rates for
>        the upper brackets were very high and we had three
>        kids in college.  We were desperate for some tax
>        relief to make ends meet.  I took my husband's
>        word that it was OK.

The referenced news article, from the May 13, 1982, edition of the Rocky Mountain News, reported that Attorney General Smith considered some $66,000 in deductions attributable to a $16,500 "investment in a risky energy tax shelter" to be "proper", but it quoted a Justice Department spokesman as stating that Mr. Smith "will look into it to reassure himself".  The article cited a Washington Post report quoting "experts" as describing the venture "as 'one of the most aggressive and perhaps questionable tax shelters available to wealthy Americans'".  The report was

also quoted as saying that Attorney General Smith and other investors "hope to beat an IRS challenge in court."

OPINION

## I.  Introduction

The Jonsons made joint returns of income for the audit years, and respondent determined deficiencies in the taxes shown on those returns, which deficiencies petitioners concede. Normally, therefore, on account of section 6013(d)(3), Barbara would be jointly and severally liable for the payment of the deficiencies (along with interest).  Section 6013(d)(3) provides: "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."  In certain situations, however, a joint return filer can avoid such joint and several liability.  In pertinent part, section 6015(a) provides:

> SEC. 6015(a).  In General.--Notwithstanding section 6013(d)(3)--
>
> (1) an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b), and
>
> (2) if such individual is eligible to elect the application of subsection (c), such individual may, in addition to any election under paragraph (1), elect to limit such individual's liability for any deficiency with respect to such joint return in the manner prescribed under subsection (c).

Section 6015(f) provides a joint filer an additional alternative for relief from joint and several liability, at the discretion of the Secretary.

Petitioners ask the Court to find that Barbara is entitled to section 6015 relief with respect to the deficiencies (and interest), alternatively, under subsection (b) (relief applicable to all joint filers), (c) (limited liability for taxpayers no longer married, legally separated, or living apart), or (f) (discretionary relief) of section 6015. Respondent denies that Barbara is entitled to relief under any provision of section 6015.

Except as otherwise provided in section 6015, petitioners bear the burden of proof. See Rule 142(a).

II. Relief Under Section 6015(b)(1)

A. Statutory Language

Section 6015(b)(1) provides:

SEC. 6015(b). Procedures for Relief From Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she

did not know, and had no reason to know, that there was such understatement;

   (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement, and

   (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

B.  Application to Barbara

   1.  In General

Respondent does not dispute that Barbara satisfies the requirements of subparagraphs (A), (B), and (E) of section 6015(b)(1).  The parties disagree as to whether Barbara satisfies the requirements of subparagraphs (C) and (D); viz, whether (1) Barbara had actual or constructive knowledge of the understatements of tax (here, equal to the deficiencies (the understatements)) attributable to the losses and (2) is entitled to equitable relief.

2. Section 6015(b)(1)(C)

a. Introduction

(1) Similarity to Section 6013(e)

The no-knowledge-of-the-understatement requirement of section 6015(b)(1)(C) is similar to the corresponding requirement in former section 6013(e)(1)(C). Cheshire v. Commissioner, 115 T.C. 183, 192 (2000). Both provisions require the relief-seeking spouse to establish that "in signing the return, he or she did not know, and had no reason to know" of the understatement. Because of the similarity between the two provisions, we have held that "cases interpreting old section 6013(e) remain instructive as to our analysis of whether a taxpayer 'knew or had reason to know' of an understatement pursuant to new section 6015(b)." Butler v. Commissioner, 114 T.C. 276, 283 (2000).

(2) Application of Knowledge Requirement in Deduction Cases

The relief-seeking spouse knows of an understatement of tax if she knows of the transaction that gave rise to the understatement. E.g., Purcell v. Commissioner, 826 F.2d 470, 473-474 (6th Cir. 1987), affg. 86 T.C. 228 (1986); see also Smith v. Commissioner, 70 T.C. 651, 672 (1978). She has reason to know of the understatement if she has reason to know of the transaction that gave rise to the understatement. See, e.g., Bokum v. Commissioner, 94 T.C. 126, 146 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). While courts consistently apply this

approach to omission of income cases, certain of the Courts of Appeals, beginning with the Court of Appeals for the Ninth Circuit, have adopted what may be a more lenient approach to deduction cases, which requires "a spouse seeking relief to establish that she did not know and did not have reason to know that the deduction would give rise to a substantial understatement."[7]  See Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court; see also Reser v. Commissioner, 112 F.3d 1258 (5th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1995-572; Resser v. Commissioner, 74 F.3d 1528 (7th Cir. 1996), revg. and remanding T.C. Memo. 1994-241; Kistner v. Commissioner, 18 F.3d 1521 (11th Cir. 1994), revg. and remanding T.C. Memo. 1991-463; Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101.  In Bokum v. Commissioner, supra at 153, however, we declined to apply the Price approach to deduction cases.[8]

---

[7]  The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 1301, 112 Stat. 685, 734, eliminated the requirement of former sec. 6013(e)(1)(C) that the understatement be "substantial".

[8]  Of course, under the rule established in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we are bound to defer to the decision of a Court of Appeals squarely on point, where that Court of Appeals is the likely venue for appeal.

The Court of Appeals for the Tenth Circuit is the likely venue for any appeal of this case.  We have found no published authority of the Court of Appeals for the Tenth Circuit adopting the Price approach.  In an unpublished order and judgment, however, the Court of Appeals for the Tenth Circuit recently quoted Price, as follows:  "A spouse has 'reason to know' of the substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement."  Estate of Sympson v. Commissioner, 79 AFTR 2d 97-2942, at 97-2944, 97-1 USTC par. 50,484, at 88,288 (10th Cir. 1997).

Because we believe that Barbara had reason to know of the understatements under the more lenient approach followed by the Court of Appeals for the Ninth Circuit in Price v. Commissioner, supra, any disparity between our interpretation of section 6015(b)(1)(C) and that of a court following Price is immaterial to our disposition of this case.

> b.  Reason to Know

> (1)  Introduction

In Price v. Commissioner, supra at 965, the Court of Appeals for the Ninth Circuit said:

> A spouse has "reason to know" of the substantial
> understatement if a reasonably prudent taxpayer in her
> position at the time she signed the return could be
> expected to know that the return contained the

substantial understatement.  Factors to consider in analyzing whether the alleged innocent spouse had "reason to know" of the substantial understatement include: (1) the spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances.  [Citations omitted.]

(2)  Discussion

(a)  Education

Barbara was highly educated, with a master's degree relating to education, her chosen professional field.

(b)  Involvement in Financial Affairs

Barbara was peripherally involved in David's consulting business; she kept him advised of collections and reminded him to pursue delinquent accounts.  She had full responsibility for writing the checks for household bills, reviewing the bank statements, and balancing the family checkbook.  She controlled the investment of her own retirement savings.  She was a coinvestor with David in a real estate limited partnership, and she was a coowner with him of an apartment building, which building they sold, at least in part, on the basis of her advice to David that the investment was unprofitable.  She was shown the documents relating to the investment in Vulcan and understood that it would result in substantial tax savings.  She was also aware of the large deductions taken on the returns for the audit

years that were attributable to the Vulcan investment, and she was made aware of the tax risks by the Vulcan subscription agreement, with its reference to tax risks, and (for 1982) by the May 13, 1982, newspaper article confirming Vulcan's status as an "aggressive" and "questionable" tax shelter subject to potential IRS attack.  For all of those reasons, it is clear that Barbara had significant involvement in the family's financial affairs.  In particular, she had reason to know of the tax benefits and potential tax risks associated with the investment in Vulcan.

(c)  Expenditure Levels, Standard of Living, Etc.

There is no evidence that the tax savings generated by the investment in Vulcan resulted in lavish or unusual expenditures benefiting Barbara when compared to prior years' spending patterns.  That factor is not determinative, however, as to whether Barbara benefited from such tax savings.  See Hayman v. Commissioner, supra at 1263.  In this case, it is clear that the tax savings were immensely beneficial to both David and Barbara.  For each of the audit years, the losses sheltered in excess of 80 percent of David's income.  The losses, thus, reduced the Jonsons' taxes and contributed to their ability to pay for their children's college educations and still maintain their normal standard of living.  As Barbara freely admitted in filling out the innocent spouse questionnaire sent to her by petitioners' counsel, "IRS tax rates for the upper brackets were very high and

we had three kids in college. We were desperate for some tax relief to make ends meet."

### (d) Other Spouse's Evasiveness and Deceit Regarding Finances

David made clear during his trial testimony that Barbara was aware of his investments, she had access to all of his files and to his office, and he made no effort to deceive her with respect to his financial affairs.

### (3) Conclusion

All the foregoing factors support a finding that Barbara had reason to know of the understatements. It is significant that Barbara knew (1) of the investment in Vulcan, (2) that it was designed to generate large deductions that, in turn, would result in substantial tax savings, (3) that those deductions were taken on the joint returns for the audit years, and (4) that there was a risk that the deductions might be attacked by respondent and disallowed on audit. "Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing * * * the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability." Hayman v. Commissioner, 992 F.2d at 1262. See also Price v. Commissioner, 887 F.2d at 964, where the Court of Appeals stated:

> [I]f a spouse knows virtually all of the facts
> pertaining to the transaction which underlies the
> substantial understatement, her defense in essence is

> premised solely on ignorance of law. * * * In such a
> scenario, regardless of whether the spouse possesses
> knowledge of the tax consequences of the item at issue,
> she is considered as a matter of law to have reason to
> know of the * * * understatement * * *.

Therefore, applying the approach of Price v. Commissioner, supra, we find that Barbara had reason to know of the understatements.

### 3. Section 6015(b)(1)(D)

#### a. Introduction

Because the requirements of section 6015(b)(1) are stated in the conjunctive, Barbara's failure to satisfy the lack of knowledge requirement of section 6015(b)(1)(C) is a sufficient condition for us to find that she does not qualify for relief under section 6015(b). Nevertheless, since, in light of the facts and circumstances of this case, we believe that it would not be inequitable to hold her liable for the deficiencies, we discuss the application of section 6015(b)(1)(D).

#### b. Discussion

The requirement, in section 6015(b)(1)(D), that it be inequitable to hold the requesting spouse liable for an understatement on a joint return, is virtually identical to the same requirement of former section 6013(e)(1)(C). Therefore, as in the case of the no-knowledge-of-the-understatement requirement of section 6015(b)(1)(C), cases interpreting former section 6013(e) remain instructive as to our analysis. See Butler v. Commissioner, 114 T.C. at 283.

Whether it is inequitable to hold a spouse liable for a deficiency is determined "taking into account all the facts and circumstances". Sec. 6015(b)(1)(D). Most often cited as material factors to be considered are (1) whether there has been a significant benefit to the spouse claiming relief, and (2) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse. See, e.g., Hayman v. Commissioner, 992 F.2d at 1262. Normal support is not considered a significant benefit. Id.

As noted in connection with our discussion of the application, to Barbara, of the lack of knowledge requirement of section 6015(b)(1)(C), it is clear that the tax savings were immensely beneficial to both David and Barbara, in that the savings contributed to their ability to pay for their children's college educations and still maintain their standard of living. In Barbara's own words, the tax savings enabled her and David "to make ends meet". Without the tax savings generated by the Vulcan investment, David and Barbara would not have had a sufficient cashflow to cover their family expenditures, including their children's educations.

It is also clear that there was no "concealment" on David's part. As noted supra p. 20, Barbara had access to David's files and to his office, and he never tried to deceive her with respect

to his financial affairs.  Barbara was fully aware of the Vulcan investment, of the tax benefits to be derived, and of the risk that those benefits might be challenged by the IRS on audit.

Under the foregoing circumstances, we find that it would not be inequitable to hold Barbara liable for the deficiencies arising out of the Vulcan investment.

C.  Conclusion

Barbara has failed to satisfy the requirements of either section 6015(b)(1)(C) or (D).

III.  Relief Under Section 6015(c)

A.  Statutory Language

Section 6015(c) provides in pertinent part:

SEC. 6015(c).  Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--

(1)  In general.--Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

* * * * * * *

(3)  Election.--

(A)  Individuals eligible to make election.--

(i) In general.--An individual shall only be eligible to elect the application of this subsection if--

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

(II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed.

\* \* \* \* \* \* \*

(C) Election not valid with respect to certain deficiencies.--If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

Section 6015(d) specifies how an individual's separate liability under section 6015(c) is to be determined.

B. Application to Barbara

1. Introduction: Eligibility; Validity

Prior to Barbara's death on March 16, 1996, she did not satisfy the eligibility requirements of section 6015(c)(3)(A)(i) (sometimes, the eligibility requirements), because she was married to, not legally separated from, and a member of the same household as David. On June 13, 2000, David, as "Personal Representative", submitted to respondent the Form 8857, by which, petitioners argue, David elected separate liability treatment for

Barbara under section 6015(c). Respondent does not challenge David's authority, as personal representative, to make such election. Respondent challenges petitioners' claim that Barbara satisfies the eligibility requirements. Petitioners claim that, on June 13, 2000, Barbara (having died more than 4 years earlier) was not married to David and had not been part of his household for more than 1 year, thereby satisfying two of the three alternative eligibility requirements of section 6015(c)(3)(A)(i). Respondent further argues that, even if we were to decide that Barbara satisfies the eligibility requirements, David cannot make a valid election with respect to the understatements because respondent has demonstrated that, at the time Barbara signed the joint returns, she had actual knowledge of the items giving rise to the understatements (i.e. the Vulcan transaction). See sec. 6015(c)(3)(C). Because we agree with respondent that Barbara did not satisfy the eligibility requirements, we need not determine whether David's election was invalid solely on account of section 6015(c)(3)(C).

### 2. Eligibility

#### a. Introduction

Section 6015(a)(2) provides that an individual who has made a joint return (and who is eligible to elect the application of section 6015(c)) may elect to limit his or her joint return liability in the manner prescribed in section 6015(c). Nowhere

is it provided that anyone other than the joint return filer can elect to limit the joint return filer's liability. Therefore, we assume that David was acting in a representative capacity (for Barbara) in attempting to elect the application of section 6015(c). See sec. 6903(a); Natl. Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1436 (D.C. Cir. 1995) ("A person, such as an executor, acting in a representative capacity, assumes 'the powers, rights, duties, and privileges' of the principal under the Internal Revenue Code."); Estate of Jayne v. Commissioner, 61 T.C. 744, 750 (1974) (in carrying forward the wishes of a deceased taxpayer, an executor "acts in a representative capacity" (citing Miller Music Corp. v. Daniels, Inc., 362 U.S. 373 (1960)); Fox Film Corp. v. Knowles, 261 U.S. 326 (1923)). In a representative capacity, an executor "merely stands in the shoes of the deceased." Estate of Jayne v. Commissioner, supra. In Estate of Jayne, the question was whether the acquisition of property by a surviving spouse replaced property sold under threat of condemnation by the deceased spouse so as to defer the recognition of gain on such sale pursuant to section 1033. We stated that the right to use the nonrecognition provisions of section 1033 does not terminate per se on the death of a taxpayer. Estate of Jayne v. Commissioner, supra at 750. We added: "A person found to be acting on behalf of the deceased

taxpayer is given the same rights * * * under section 1033 as the taxpayer possessed prior to his death."  Id.

On the face of it, then, because, prior to her death, Barbara did not satisfy the eligibility requirements, David, acting in her stead, is ineligible to elect to limit her joint return liability.  We do, nevertheless, consider whether Congress intended a spouse's eligibility to arise on account of her death.

b.  Legislative History

Both petitioners and respondent refer to the history of section 6015(c) in support of their opposing claims with respect to Barbara and the eligibility requirements.  We have examined that history and find nothing therein to controvert the rule that David, as personal representative, possessed rights no greater than those Barbara possessed immediately prior to her death.

Section 6015 was added to the Internal Revenue Code by section 3201 of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734, which enacted H.R. 2676, 105th Cong. (1997) (H.R. 2676).  Section 3201 of RRA 1998 generally revised and expanded the relief previously available to joint filers under section 6013(e).  The provisions of section 6015(c) originated as a Senate amendment to H.R. 2676 (the Senate amendment).  With certain restrictions, the Senate amendment allowed any spouse to elect separate liability treatment.  The eligibility requirements

were added by the conference agreement reconciling the differing versions of H.R. 2676 passed by the House of Representatives and the Senate, respectively.  See H. Conf. Rept. 105-599, at 251 (1998), 1998-3 C.B. 747, 1005.  The reasons for the change with respect to the Senate amendment are described in pertinent part as follows in the report of the Committee on Finance that accompanied H.R. 2676, S. Rept. 105-174, at 55 (1998), 1998-3 C.B. 537, 591:

### Reasons for Change

The Committee is concerned that the innocent spouse provisions of present law are inadequate.  The Committee believes that a system based on separate liabilities will provide better protection for innocent spouses than the current system.  The Committee generally believes that an electing spouse's liability should be satisfied by the payment of the tax attributable to that spouse's income and that an election to limit a spouse's liability to that amount is appropriate.

The conferees did not explain their addition of the eligibility requirements.  See H. Conf. Rept. 105-559, supra at 251, 1998-3 C.B. at 1005.  They did however state that, for purposes of the eligibility requirements, a taxpayer is no longer married if he or she is widowed.  Id. at 252 n.16, 1998-3 C.B. at 1006.  Statements on the floor of the Senate, in support of the Senate amendment, indicate the speakers' concerns for a wife whose husband had left town or who had otherwise left her with the full joint and several liability imposed by section 6013(d). See statements of Senators Graham and Abraham, reported at 144

Cong. Rec. S4473-4474 and S4493 (daily ed. May 7, 1998), respectively. Such concerns square with the restrictions added by the eligibility requirements and are consistent with treating a widow or widower as no longer married. Such concerns are not ignored by treating a spouse such as Barbara, who, the record indicates, was happily married to her husband at the time she died, as failing to meet the eligibility requirements. Petitioners' claim to section 6015(c) relief turns the statute on its head, in that David became a widower; Barbara was never widowed. We are not convinced by the relevant legislative history that Congress's purpose in allowing separate liability treatment to eligible spouses would be furthered by allowing David to elect such treatment on behalf of Barbara.[9]

### c. Conclusion

At the time of her death, Barbara did not satisfy the eligibility requirements.

---

[9] In fact, separate liability treatment would be particularly inappropriate in this case. Barbara left her entire estate to David. Although David disclaimed his inheritance in favor of the children, the disclaimer provided for the investment of the assets (in exchange for stock issued to the children) in Jonson Management Co., Inc., David's geological consulting corporation (formed after the audit years). The conclusion is inescapable that David, the nonrequesting spouse, stands to benefit as much as anyone should the assets of Barbara's estate be immune from the collection of deficiencies for which both David and Barbara normally would be jointly liable.

C. <u>Conclusion</u>

Because, at the time of her death, Barbara did not satisfy the eligibility requirements, David, as her personal representative, cannot elect to limit Barbara's joint return liability in the manner prescribed in section 6015(c).

IV. <u>Relief Under Section 6015(f)</u>

A. <u>Statutory Language</u>

Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

B. <u>Application to Barbara</u>

1. <u>Introduction</u>

Respondent has denied Barbara relief under section 6015(f). We have jurisdiction to review such denial of relief. <u>Butler v. Commissioner</u>, 114 T.C. at 292. We review such denial of relief to determine whether respondent abused his discretion by acting arbitrarily, capriciously, or without sound basis in fact. See <u>id.</u>; <u>Pac. First Fed. Sav. Bank v. Commissioner</u>, 101 T.C. 117, 121 (1993). Petitioners have failed to make that showing.

2. Discussion

As directed by section 6015(f), respondent has prescribed procedures to use in determining whether a relief-seeking spouse qualifies for relief under section 6015(f). Those procedures are found in Rev. Proc. 2000-15 (the revenue procedure), 2000-5 I.R.B. 447, modifying and superseding Notice 98-61, 1998-51 I.R.B. 13. Section 7 of the revenue procedure states that it is effective on January 18, 2000, which precedes David's submission to respondent of the Form 8857 on June 13, 2000. Section 4.03 of the revenue procedure, applicable to a relief-seeking spouse in Barbara's situation, provides: "The Secretary may grant equitable relief under § 6015(f) * * * if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid liability or deficiency." The revenue procedure includes a partial list of positive and negative factors that will be taken into account in determining whether to grant full or partial relief and cautions that no single factor will be determinative of whether equitable relief will or will not be granted in any particular case. It states: "Rather, all factors will be considered and weighed appropriately."

Petitioners have failed to introduce any evidence showing the basis for respondent's rejection of their claim for equitable relief for Barbara. Nevertheless, the revenue procedure establishes as factors weighing against equitable relief whether

the relief-seeking spouse (1) had knowledge or reason to know of the items giving rise to the deficiency, (2) has significantly benefited (beyond normal support) from those items, and (3) will not experience economic hardship if relief from the liability is not granted. Barbara was aware of the Vulcan investment, of the resulting reported losses, and of the risk of an IRS challenge to the tax reductions claimed to result from those reported losses. Clearly, then, she had reason to know of the items giving rise to the deficiencies. She benefited from the items in that the losses, among other things, reduced the Jonsons' taxes and contributed to their ability to pay for their children's college educations, which Barbara admitted was important to her. Because Barbara is deceased, there can be no economic hardship to her personally if equitable relief is denied. We cannot conclude that respondent acted arbitrarily, capriciously, or without sound basis in fact in denying Barbara equitable relief.

### 3. Conclusion

Under the facts and circumstances of this case, we hold that respondent did not abuse his discretion in denying equitable relief to Barbara under section 6015(f).

V.  <u>Conclusion</u>

Barbara is not entitled to any relief under section 6015.

<u>An appropriate decision</u>

<u>will be entered for respondent</u>

<u>with respect to the</u>

<u>deficiencies and for</u>

<u>petitioners with respect to</u>

<u>the additions to tax under</u>

<u>section 6659</u>.