T.C. Summary Opinion 2007-125

UNITED STATES TAX COURT

MAGDALENA PACHECO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7183-05S.                    Filed July 23, 2007.

<u>Ned Leiba</u>, for petitioner.

<u>Daniel W. Layton</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as in effect for the years at

issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner seeks review of respondent's notice of determination dated January 12, 2005, denying her relief from joint and several liability under section 6015(c) and (f) for 1995, 1996, and 1997.[1]  After a concession,[2] the issues for decision are:  (1) Whether the doctrine of res judicata under section 6015(g)(2)[3] bars petitioner from raising relief under section 6015 for 1995 and 1996, and if not, whether petitioner is entitled to relief from joint and several liability under section 6015(c) for 1995 and 1996; and (2) whether petitioner is entitled to relief from joint and several liability under section 6015(c) for 1997.

---

[1]The Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(a), 112 Stat. 734, repealed sec. 6013(e) and replaced it with sec. 6015.  Sec. 6015 applies to any tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, and unpaid as of that date.  RRA 1998 sec. 3201(g), 112 Stat. 740.  Sec. 6015, therefore, applies in this case.

[2]Petitioner concedes that she is not entitled to relief from joint and several liability under sec. 6015(f) for 1995, 1996, and 1997.

[3]The Consolidated Appropriations Act, 2001, Pub. L. 106-544, app. G, sec. 313(a)(2)(A), 114 Stat. 2763A-640 (2000), enacted on Dec. 21, 2000, redesignated subsec. (g) of Code sec. 6015 as subsec. (h) and inserted the language of Code sec. 6015(e)(3)(B) in new subsec. (g)(2).  The effective date of this change is the date of enactment.  Id. sec. 313(f), 114 Stat. 2763A-643.

## Background

The stipulated facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in Stockton, California.

Juan Pacheco (Mr. Pacheco), petitioner's spouse, was born in Mexico. He died in California on May 22, 2000. Mr. Pacheco completed the third grade in Mexico, and he did not speak, read or write English.

Petitioner was also born in Mexico. She graduated from high school in Mexico, and she came to the United States in 1986.

Mr. Pacheco obtained a California farm labor contractor's license and started a farm labor contracting business in 1980. In 1990, Mr. Pacheco lost his license, and in that same year, petitioner started to work as a farm labor contractor. In 1991, petitioner obtained a California farm labor contractor's license, and the name of Mr. Pacheco's former business was changed to Magdalena Pacheco Farm Labor Contractor (Contractor).

During 1995, 1996, and 1997, petitioner and Mr. Pacheco operated Contractor in Stockton, California. Operators of farms or vineyards would contact Contractor when they needed temporary farm labor. Contractor would provide the requested workers, and the farm or vineyard would pay Contractor which would in turn pay the workers.

During 1995, petitioner also worked as a food packaging machine operator at Safeway Markets.

Taxable Years 1995 and 1996

Examination of the Returns

Petitioner and Mr. Pacheco filed jointly for 1995 and 1996 Forms 1040, U.S. Individual Income Tax Return, prepared by a paid preparer. In 1997, the returns were selected for examination, and the case was assigned to Revenue Agent Patrick Lunny (RA Lunny).

During the examination process, RA Lunny interacted only with petitioner or with one of her representatives. It is not disputed that RA Lunny never met with or spoke with Mr. Pacheco during the audit because Mr. Pacheco did not speak English.

RA Lunny determined that petitioner and Mr. Pacheco had unreported income from Contractor on the basis of the third party information returns that the farmers filed with the Internal Revenue Service (IRS). RA Lunny also determined that certain business expense deductions for Contractor were not substantiated on the Schedules C, Profit or Loss From Business, for 1995 and 1996.

On October 23, 1998, respondent issued to petitioner and Mr. Pacheco a statutory notice of deficiency, determining for 1995 and 1996, respectively, deficiencies in Federal income taxes of

$48,826 and $54,467 and section 6662(a) accuracy-related penalties of $9,765 and $10,893.

Tax Court Proceeding

On January 25, 1999, petitioner and Mr. Pacheco petitioned the Court, docket No. 1474-99, seeking a redetermination of the deficiencies and the section 6662(a) accuracy-related penalties for 1995 and 1996 (prior proceeding).

The Court entered a stipulated decision in the prior proceeding on June 29, 2000, with respect to the deficiencies and penalties for 1995 and 1996, and no appeal was filed. The parties have stipulated that relief under section 6015 was not raised as an issue at any time during the prior proceeding.

Taxable Year 1997

Petitioner and Mr. Pacheco filed jointly for 1997 a Form 1040 prepared by a paid preparer. RA Lunny subsequently expanded the scope of his audit to include 1997. On March 16, 2000, petitioner and Mr. Pacheco consented to the assessment of an additional tax liability of $9,503 plus interest for 1997. No penalties were assessed.

Collection Action

On June 6, 2002, petitioner filed a petition for levy action with the Court, docket No. 9654-02L, in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 dated May 10, 2002, for 1995, 1996, and 1997.

The Court entered a decision on May 16, 2003, in docket No. 9654-02L, pursuant to a stipulation between petitioner and respondent, relating to the collection of petitioner's income tax liabilities for 1995, 1996, 1997.

Request for Innocent Spouse Relief

Respondent received from petitioner on June 3, 2002, a Form 8857, Request for Innocent Spouse Relief, in which petitioner requested relief from joint and several liability under section 6015(c) and (f) for 1995, 1996, and 1997.

A Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015 (notice of determination) denying petitioner's request was issued to petitioner on January 12, 2005.

Present Proceeding

On April 18, 2005, petitioner filed with the Court a petition seeking a review of the notice of determination denying her request for relief from joint and several liability under section 6015 for 1995, 1996, and 1997.

Respondent filed a motion to file answer out of time to allege the application of res judicata under section 6015(g)(2) for 1995 and 1996. Petitioner filed an objection, and respondent filed a response to petitioners's objection. A hearing was held, and the Court granted respondent's motion to file an answer out of time to allege the application of section 6015(g)(2).

Respondent subsequently amended his answer, without objection from petitioner, to allege actual knowledge of the items giving rise to the deficiencies for the years in issue.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3). Section 6015 provides, however, that a spouse may seek relief from joint and several liability on a joint return under certain circumstances.

A spouse (requesting spouse) may seek relief from joint and several liability under section 6015(b), or if eligible, may allocate liability according to section 6015(c). If relief is not available under section 6015(b) or (c), the requesting spouse may seek equitable relief under section 6015(f). Sec. 6015(f)(2); Butler v. Commissioner, 114 T.C. 276, 287-292 (2000).

Petitioner claims that she is entitled to relief from joint and several liability under section 6015(c) for 1995, 1996, and 1997. Respondent argues that petitioner's claim for relief under section 6015(c) with respect to 1995 and 1996 is barred by the doctrine of res judicata by operation of section 6015(g)(2). Respondent contends that section 6015(g)(2) applies because: (1) The Court entered a final decision for 1995 and 1996 in the prior proceeding; (2) petitioner participated meaningfully in the prior

proceeding; and (3) petitioner could have raised relief under section 6015 in the prior proceeding.

Since the stipulated decision entered in the prior proceeding did not include 1997, section 6015(g)(2) does not bar petitioner's claim for relief under section 6015(c) from joint and several liability for 1997.

Application of Section 6015(g)(2) to 1995 and 1996

Under section 6015, the requesting spouse bears the burden of proof except where that section otherwise provides.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); see also sec. 6015(c)(3)(A)(ii), (C), (d)(3)(C).  Section 6015 does not provide that the Commissioner bears the burden of proof under section 6015(g)(2).  Monsour v. Commissioner, T.C. Memo. 2004-190.  The requesting spouse therefore bears the burden of proof under section 6015(g)(2).  Huynh v. Commissioner, T.C. Memo. 2006-180.

The doctrine of res judicata may preclude a requesting spouse from obtaining relief under section 6015.  See sec. 6015(g)(2).  Generally, where a court of competent jurisdiction enters a final judgment on the merits of a cause of action, the parties to the action are bound by every matter that was or could have been offered and received to sustain or defeat the claim.

Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Thurner v. Commissioner, 121 T.C. 43, 50 (2003). Because Federal income taxes are determined on an annual basis, each year is a separate cause of action, and res judicata is applied to bar subsequent proceedings involving the same tax year. Commissioner v. Sunnen, supra at 598; Calcutt v. Commissioner, 91 T.C. 14, 21 (1988).

Tax Court decisions reached by agreement constitute a final judgment on the merits for purposes of res judicata. See United States v. Shanbaum, 10 F.3d 305, 313 (5th Cir. 1994); Trent v. Commissioner, T.C. Memo. 2002-285. The Court entered a stipulated decision in the prior proceeding with respect to the tax liabilities for 1995 and 1996. The decision is final because petitioner and Mr. Pacheco did not appeal the stipulated decision within the requisite time under the statute. See secs. 7481(a)(1), 7483.

Section 6015(g)(2), however, modifies the common law doctrine of res judicata with regard to claims under section 6015. Section 6015(g)(2) provides in relevant part:

SEC. 6015(g). Credits and Refunds.--

       \*     \*     \*     \*     \*     \*     \*

     (2) Res judicata.-- In the case of any election under subsection (b) or (c), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue

> in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

Therefore, a requesting spouse cannot make an election under section 6015(b) or (c) for any taxable year that is the subject of a final court decision unless the requesting spouse's qualification for relief under section 6015(b) or (c) was not an issue in the prior court proceeding and the requesting spouse did not participate meaningfully in the prior proceeding. Vetrano v. Commissioner, 116 T.C. 272, 278 (2001).

Section 1.6015-1(e), Income Tax Regs., imposes an additional requirement for the application of section 6015(g)(2). The requesting spouse must show that she could not have raised relief under section 6015 in the prior proceeding. Id. Section 1.6015-1(e), Income Tax Regs., provides:

> (e) Res judicata and collateral estoppel.--A requesting spouse is barred from relief from joint and several liability under section 6015 by res judicata for any tax year for which a court of competent jurisdiction has rendered a final decision on the requesting spouse's tax liability if relief under section 6015 was at issue in the prior proceeding, or if the requesting spouse meaningfully participated in that proceeding and could have raised relief under section 6015. * * *

Taxable years 1995 and 1996 are the subject of a final court decision, and respondent agrees that petitioner's qualification for relief was not raised as an issue in the prior proceeding. The parties dispute whether petitioner could have raised relief

under section 6015 in the prior proceeding and whether she participated meaningfully in the prior proceeding.

Whether Petitioner Could Have Raised Relief Under Section 6015 in the Prior Proceeding

Section 6015 encompasses three types of relief: (1) Subsection (b) provides full or apportioned relief from joint and several liability; (2) subsection (c) provides proportionate tax relief to divorced or separated taxpayers;[4] and (3) subsection (f) provides equitable relief from joint and several liability in certain circumstances if neither subsection (b) nor (c) is applicable. Noons v. Commissioner, T.C. Memo. 2004-243.

Petitioner argues that she could not have raised relief under section 6015 in the prior proceeding because relief under subsection (c) was not available to her until the death of Mr. Pacheco on May 22, 2000. Respondent counters that petitioner could have raised relief under subsections (b) and (f). Respondent argues that the language under section 1.6015-1(e), Income Tax Regs., "could have raised relief under section 6015", means that if petitioner could have raised relief under any of subsections (b), (c), and (f) at any point in the prior proceeding, the requirement is met.

_____

[4]For purposes of determining eligibility for relief under sec. 6015(c), a widow or widower is treated as a taxpayer who is no longer married. See Jonson v. Commissioner, 118 T.C. 106, 124 (2000), affd. 353 F.3d 1181 (10th Cir. 2003); Rosenthal v. Commissioner, T.C. Memo. 2004-89.

In the prior proceeding, petitioner and Mr. Pacheco were represented by Arthur Leiba (Mr. Leiba). Mr. Leiba submitted a statement in lieu of testimony at trial, admitting that before the death of Mr. Pacheco, he was "generally aware of innocent spouse relief, but not specific provisions. To the best of my knowledge and recollection, if * * * [petitioner] benefitted from the tax returns, she couldn't take advantage of it."

Before the death of Mr. Pacheco, relief under subsection (c) was not yet available to petitioner. Nevertheless, petitioner could have raised relief under subsections (b) and (f), but her counsel, in his judgment, decided not to do so.

Upon the death of Mr. Pacheco on May 22, 2000, however, petitioner became eligible to elect relief under subsection (c). At the time, the prior proceeding was still pending.

The proper time to elect relief under section 6015 is at any point after a deficiency has been asserted by the IRS. See Vetrano v. Commissioner, supra at 279. "'This is the least disruptive for both the taxpayer and the IRS since it allows both to focus on the innocent spouse issue while also focusing on the items that might cause a deficiency.'" Id. (quoting H. Conf. Rept. 106-1033, at 1023 (2000)). It also permits every issue, including the innocent spouse issue, to be resolved in a single administrative and judicial process. Id.

Moreover, in Vetrano, this Court held that once the taxpayer became eligible for section 6015 relief under a particular subsection, she had to file an election. Id. at 282. If a taxpayer failed to make an election in the first proceeding and attempted to make an election in a subsequent proceeding after the first proceeding became final, she would be barred by res judicata from making an election in the subsequent proceeding. Id. at 283-284.

Petitioner argues that she could not have raised relief under subsection (c) in the prior proceeding because: (1) Her counsel at the time did not inform her that such relief was available, and (2) the 1995 and 1996 taxes were "definitively settled" before Mr. Pacheco's death.

Petitioner claims that she was not informed by her counsel that she could have sought relief under subsection (c) and that she would not have signed the stipulated decision had she known. Mr. Leiba acknowledged in his statement that "after * * * [Mr. Pacheco] died, I don't remember considering * * * [innocent spouse relief]. I didn't reevaluate the situation after he died because they both agreed to the liability and there was no dispute."

The quality of advocacy and the actual knowledge of the litigants are not special circumstances in determining whether a prior judgment is a bar in subsequent litigation. Trent v.

Commissioner, T.C. Memo. 2002-285.  Therefore, Mr. Leiba's
failure to inform petitioner that she could seek relief under
subsection (c) is insufficient to overcome the bar of res
judicata.

Petitioner's counsel contends that a month before Mr.
Pacheco's death, petitioner and Mr. Pacheco had "definitively
settled" the taxes for 1995 and 1996 with RA Lunny.  On April 25,
2000, RA Lunny completed the tax examination report, and the file
was sent to the Appeals Office.  Petitioner's counsel argues that
the prior proceeding effectively concluded at the point when the
file left RA Lunny's office.  Therefore, petitioner did not have
an opportunity to raise relief under subsection (c) in the prior
proceeding.

RA Lunny testified that his role was to make
recommendations, and it was up to the Appeals Office to "make the
final call" on whether to accept them.  The Court, after
reviewing the evidence presented by petitioner and respondent,
agrees with respondent that the prior proceeding was not final at
the time the file left RA Lunny's office.

Petitioner could have raised relief under subsection (c) in
the prior proceeding at any time between Mr. Pacheco's death on
May 22, 2000, and the entry of the decision document on June 29,
2000.  Even after the decision has been entered, under Rule 162,
petitioner could have moved to vacate the decision within 30 days

after the decision had been entered. Petitioner, however, did not raise relief under subsection (c) during the prior proceeding.

Whether Petitioner Participated Meaningfully in the Prior Proceeding

Petitioner bears the burden of proving by a preponderance of the evidence that she did not participate meaningfully in the prior proceeding. See Monsour v. Commissioner, T.C. Memo. 2004-190. At trial, petitioner's counsel conceded that petitioner participated meaningfully in the prior proceeding relating to 1995 and 1996 up to April of 2000, or about a month before the death of Mr. Pacheco. Petitioner's counsel argued that after April of 2000, petitioner did not participate "meaningfully" because the remaining actions that were required to conclude the proceeding for 1995 and 1996 were ministerial.

Court cases have not clearly defined "meaningful participation" in all respects. Huynh v. Commissioner, T.C. Memo. 2006-180. Nevertheless, the Court has held that signing Court documents and participating in settlement negotiations are indicators of meaningful participation. Id.; Monsour v. Commissioner, supra. It is not disputed that petitioner communicated with respondent on numerous occasions in the prior proceeding, in person and by phone, to discuss settlement and to voluntarily sign court documents.

The Court, on the evidence offered, finds that petitioner participated meaningfully throughout the prior proceeding.

Exception From Res Judicata

Absent an exception from res judicata, petitioner is barred under section 6015(g)(2) from seeking relief under subsection (c) in this proceeding. Petitioner's counsel cites Smaczniak v. Commissioner, 998 F.2d 238 (5th Cir. 1993), revg. T.C. Memo. 1991-87, arguing that the Court of Appeals for the Fifth Circuit relied on "common sense" to craft an exception to ameliorate the strict application of res judicata. This case is not bound by the law of the Fifth Circuit, and in any event, Smaczniak is distinguishable.

In Smaczniak, the Commissioner voluntarily redetermined the taxpayer's liability after a final decision was entered. Id. at 242-243. The Court of Appeals held that this was akin to a "subsequent modification of the significant facts" so as to render inapplicable the effect of res judicata for the same taxable years in a subsequent proceeding. Id. at 243. In the prior proceeding, however, respondent did not voluntarily redetermine petitioner's liabilities after the entry of the final decision. Therefore, Smaczniak is not applicable.

The Court has considered the remaining arguments raised in petitioner's trial memorandum and supplement trial memorandum and finds that they are unconvincing. The Court has no authority to

override section 6015(g)(2) or vary its terms.  See <u>Vetrano v. Commissioner</u>, 116 T.C. at 280.

Accordingly, the Court concludes that section 6015(g)(2) precludes petitioner from seeking relief from joint and several liability under section 6015(c) for 1995 and 1996.

<u>Application of Section 6015(c) Relief for 1997</u>

Upon the satisfaction of certain conditions, section 6015(c) relieves the requesting spouse of liability for the items making up the deficiency that would have been allocated solely to the nonrequesting spouse if the spouses had filed separate tax returns for the taxable year.  Sec. 6015(d)(1), (3)(A); <u>Cheshire v. Commissioner</u>, 282 F.3d 326, 332 (5th Cir. 2002), affg. 115 T.C. 183 (2000); <u>Mora v. Commissioner</u>, 117 T.C. 279, 290 (2001). Section 6015(c) applies only to taxpayers who are no longer married, are legally separated, or have been living apart for over a 12-month period.  Sec. 6015(c)(3)(A)(i).  A widow or widower is treated as a taxpayer who is no longer married.  See <u>Jonson v. Commissioner</u>, 118 T.C. at 124.

Respondent received from petitioner a Form 8857, Request For Innocent Spouse Relief, for 1997 on June 3, 2002.[5]  The parties

_____

[5]Under sec. 6015(c)(3)(B), an election for relief from joint and several liability under sec. 6015(c) is to be made at any time after a deficiency is asserted but not later than 2 years after the date on which the Commissioner has begun collection action.  Respondent has not raised any issue as to the timeliness of petitioner's election under sec. 6015(c).

stipulated that petitioner is entitled to seek relief under section 6015(c) for 1997.

Relief under section 6015(c) is not available if the Commissioner demonstrates that the requesting spouse had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency (or portion thereof) that is not allocable to such individual.  Sec. 6015(c)(3)(C); Hopkins v. Commissioner, 121 T.C. 73, 86 (2003); Culver v. Commissioner, 116 T.C. 189, 194 (2001).  Petitioner has the burden of proving which items would not have been allocated to her if the spouses had filed separate returns.  See Mora v. Commissioner, supra at 290; Levy v. Commissioner, T.C. Memo. 2005-92.

While the taxpayer generally has the burden of proof, in order to preclude relief under section 6015(c) the Commissioner must carry the burden of demonstrating by a preponderance of the evidence that the requesting spouse had, at the time she signed the return, actual knowledge of "any item giving rise to a deficiency".  Rule 142(a)(1); Culver v. Commissioner, supra at 196; Charlton v. Commissioner, 114 T.C. 333, 341-342 (2000); sec. 1.6015-3(c)(2)(i), Income Tax Regs.  "Item" means "an item of income, deduction, or credit".  Cheshire v. Commissioner, supra at 337.

The items giving rise to the 1997 deficiency are:  (1) Unreported income from farmers who paid Contractor for the

workers provided, and (2) disallowed business expense deductions for failure to provide substantiation.

The Commissioner must show that the requesting spouse had an "actual and clear awareness" of omitted income. Cheshire v. Commissioner, supra at 337 n.26; Cook v. Commissioner, T.C. Memo. 2005-22; Rowe v. Commissioner, T.C. Memo. 2001-325. Knowledge of the item includes knowledge of the receipt of the income. Sec. 1.6015-3(c)(2)(i)(A), Income Tax Regs.

At trial, petitioner admitted that she cashed or deposited the checks from the farmers representing the omitted income on her return. Therefore, petitioner had actual knowledge of the omitted income.

In the case of an erroneous deduction, knowledge of the item means knowledge of the facts that made the item not allowable as a deduction. Sec. 1.6015-3(c)(2)(i)(B), Income Tax Regs.; see Rowe v. Commissioner, supra (citing King v. Commissioner, 116 T.C. 198, 204 (2001)). At trial, petitioner testified that she handled the receipts, made deposits, wrote checks, reviewed bank statements, and kept track of income and expenses for Contractor. The business account was not held jointly but was held solely in petitioner's name, doing business as Contractor. Petitioner was also responsible for dealing with the bookkeeping company that kept track of Contractor's payroll. Mr. Pacheco was not involved

in managing the finances of Contractor because his education was limited.

Petitioner's counsel agrees that petitioner was involved in the business. He argues, however, that the individual adjustments were small and that petitioner could not have actually known of every single transaction that had occurred at the time she signed the return. Under counsel's reasoning, petitioner would be required to have a tax professional's level of expertise for the Court to find actual knowledge under section 6015(c)(3)(C). In Cheshire v. Commissioner, 115 T.C. at 194, the Court rejected this knowledge standard.

Petitioner testified that she reviewed all canceled checks for Contractor, separated the checks into business related or personal, and made notes of what each check was for. Petitioner agreed that she knew whether a given expense was business or personal. Therefore, she had knowledge of the facts as to whether an item was allowable as a deduction. See sec. 1.6015-3(c)(2)(i)(B), Income Tax Regs. These admissions are sufficient for the Court to find that petitioner had actual knowledge of the pertinent items at the time that she signed the 1997 return.

In addition, respondent asserts that petitioner has held herself out as the owner of Contractor. In support, respondent produced copies of: (1) Form 943, Employer's Annual Tax Return for Agricultural Employees for 1995 and 1996, (2) Form 940-EZ,

Employer's Annual Federal Unemployment (FUTA) Tax Return for 1995 and 1996, and (3) State of California Employment Development Department, Form DE7, Annual Reconciliation Return, for 1995 and 1996. Petitioner admitted that she had signed the foregoing documents and had represented herself as the owner of Contractor. Because she was the owner of Contractor, the entire 1997 deficiency is allocable to her. See sec. 1.6015-3(d), Income Tax Regs.

The Court has reviewed all the evidence presented and finds that petitioner had actual knowledge of the items giving rise to the deficiency for 1997. The Court holds that respondent did not err in denying petitioner relief from joint and several liability under section 6015(c) for 1997 in his notice of determination dated January 12, 2005.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.