T.C. Summary Opinion 2003-126

UNITED STATES TAX COURT

LISA MARIE PIERCE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8411-02S.               Filed September 9, 2003.

Lisa Marie Pierce, pro se.

<u>Michele A. Yates</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. Pursuant to section 6330(d),[1] petitioner seeks review of respondent's determination to proceed with collection of her tax liability of $7,808 for 1994. The issue for decision is whether respondent abused his discretion by denying petitioner's request for relief from joint and several liability under section 6015(f).[2]

The stipulated facts and exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Vienna, Virginia.

## Background

Petitioner and her former spouse, Arnold Pierce, were married on August 3, 1973. Petitioner resided with Mr. Pierce until their permanent separation in November 1994. In 1994, both petitioner and Mr. Pierce worked at the Department of Defense (DOD). At the time their 1994 Federal income tax return was

[1] Sec. 6330 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 746. Sec. 6330 is effective with respect to collection actions initiated more than 180 days after July 22, 1998; i.e., after Jan. 18, 1999. See RRA 1998 sec. 3401(d), 112 Stat. 750.

[2] Sec. 6015 was enacted as part of the RRA 1998, sec. 3201(a), 112 Stat. 734, and is effective for any liability for tax arising after July 22, 1998, and any liability for tax arising on or before July 22, 1998, but remaining unpaid as of July 22, 1998.

filed petitioner and Mr. Pierce were separated. Petitioner and Mr. Pierce were divorced on July 15, 1998.

For most of their marriage, petitioner had no knowledge of any of their financial affairs. Petitioner did not know how much money they had in any of their joint accounts. Except for a brief period, Mr. Pierce managed essentially all of the family finances until their separation, including paying bills and making spending decisions. Mr. Pierce would tell petitioner how much she could spend before she would go shopping for food, clothing for the children, and most other items.

Petitioner knew that if properly managed, their combined income was sufficient to cover their monthly expenses. She was aware, however, that Mr. Pierce was a poor manager of money. She was aware that Mr. Pierce would pay their bills late every month with whatever money remained in their account. As a result, petitioner took control of the family finances for a period of 4 to 6 months in the early 1990s. When Mr. Pierce became short on spending money, he decided to reacquire control of the family finances.

Mr. Pierce was generally responsible for filing their Federal income tax returns. In most years, petitioner would sign a blank return, and Mr. Pierce would take care of completing and filing the return. Petitioner and Mr. Pierce filed joint Federal income tax returns for 1973 through 1991. For the 1989, 1990,

and 1991 tax years, petitioner and Mr. Pierce had unpaid tax liabilities.  All of their unpaid tax liabilities were paid in full on or before March 5, 1993.  Until 1996, petitioner did not know that they had underpayments of tax for 1989, 1990, and 1991.

During each tax filing season for the 1992 and 1993 tax years, petitioner noticed that Mr. Pierce had not brought her that year's return to sign.  Cognizant of the time of year, petitioner asked Mr. Pierce what happened to the tax returns; as a result of her questioning, in both years, Mr. Pierce brought her a blank return to sign.  She signed the blank returns and he said he would file them.  Mr. Pierce never filed either return.  Until 1996, petitioner was unaware that Mr. Pierce had not filed the 1992 and 1993 returns.

Petitioner and Mr. Pierce timely filed their 1994 Federal income tax return.  Line 64 of the 1994 Form 1040, U.S. Individual Income Tax Return, showed that petitioner and Mr. Pierce owed $6,401.98.  At the time the return was filed, they did not enclose a payment.  Petitioner did not know, until 1996, that they had an unpaid tax liability for 1994.

On February 15, 1996, a Notice of Levy on Wages, Salary, and Other Income was sent to both petitioner and Mr. Pierce at their marital address.  Petitioner had moved from this address when she separated from Mr. Pierce in November 1994.  Mr. Pierce continued to reside there until January 1996.  On April 1, 1996,

petitioner's payroll office informed her of a notice of tax levy it received from respondent. This was the first petitioner learned of the outstanding unpaid tax liability for 1994. Petitioner filed her 1995 tax return and reported an overpayment of $336.82, which the Internal Revenue Service (IRS) applied to the unpaid balance for the 1994 tax year. The IRS also applied an overpayment of $2,661.12 from Mr. Pierce's 1995 tax return to the unpaid balance from 1994.

When petitioner's payroll office advised her of the levy notice, she also became aware that Mr. Pierce never filed their joint returns for 1992 and 1993. On April 29, 1996, petitioner filed her Federal income tax returns for 1992 and 1993 as married filing separate, claiming overpayments of $430.03 and $316.53 respectively. Petitioner filed her 1998 tax return claiming an overpayment of $464.22, which the IRS applied to the unpaid balance for 1994.

On March 31, 2000 a "Final Notice – Notice of Intent to Levy and Notice of Your Right to a Hearing" letter was sent to both petitioner and Mr. Pierce. On April 7, 2000, petitioner timely submitted a request for a hearing. Petitioner submitted, with the request for the hearing, a Form 8857, Request for Innocent Spouse Relief, and an attached explanatory letter.

On October 31, 2000, the Examination Division sent petitioner a letter requesting more information and documentation

regarding her claim for relief from joint and several liability. On November 13, 2000, petitioner sent additional information to the Examination Division in support of her claim. On October 11, 2001, the Appeals Office sent petitioner a letter indicating the suspension of her collection claim and outlining the findings of her claim for relief from joint and several liability. Respondent, therefore, denied petitioner's collection claim because she was not entitled to relief from joint and several liability. As a result, a notice of determination was issued sustaining the issuance of the levy.

On November 2, 2001, respondent sent petitioner an application for an Offer in Compromise as well as a request for petitioner to submit a detailed current financial statement. Petitioner only submitted a 1996 financial statement. Petitioner failed to respond to the Offer in Compromise and did not provide respondent with a current financial statement.

Respondent sent petitioner a Notice of Determination (NOD) on April 8, 2002, which stated that respondent had followed all procedures in the issuance of the notice of intent to levy and that petitioner's collection appeal rights were not violated. The NOD also determined that petitioner did not qualify for relief from joint and several liability under the provisions of section 6015(f). On May 10, 2002, petitioner timely filed with the Court her petition for review of respondent's determination.

Respondent's position is that petitioner is not entitled to relief from joint and several liability because she failed to establish that she had a reasonable belief that the tax was paid or going to be paid at the time she signed the return. Respondent also argues that petitioner would not suffer from economic hardship as a result of being denied relief. Lastly, there was no evidence of abuse to sustain any relief from joint and several liability.

Petitioner argues that she is entitled to relief from joint and several liability because Mr. Pierce did not take care of the finances properly, forged her signature, and subjected her to emotional abuse. She also argues that she trusted her husband and had no reason to know or assume that he might not pay their tax liability.

## Discussion

Pursuant to section 6330, petitioner sought relief from respondent's notice of determination sustaining the proposed levy action. Section 6330 allows a taxpayer to raise appropriate spousal defenses under section 6015. Sec. 6330(c)(I)(A)(i); sec. 301.6330-1(e)(2), Proced. & Admin. Regs. The Court's jurisdiction in this case, therefore, is based on section 6015(e)(1). Raymond v. Commissioner, 119 T.C. 191 (2002); sec. 301.6330-1(f)(2), Q&A-F2, Proced. & Admin. Regs.

The Court must decide whether respondent abused his discretion in denying section 6015(f) relief with respect to an amount of tax reported on petitioner's 1994 joint return but not paid. The Court reviews respondent's determination for abuse of discretion, Butler v. Commissioner, 114 T.C. 276 (2000), and holds that respondent did not abuse his discretion and that his determination was not arbitrary.

As a general rule, spouses filing joint Federal income tax returns are jointly and severally liable for all taxes due. Sec. 6013(d)(3); Cheshire v. Commissioner, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002). Under section 6015, however, certain taxpayers are entitled to relief from joint and several liability.

There are three avenues for relief from joint liability under section 6015. Section 6015(b) provides relief with respect to understatements of tax attributable to certain erroneous items on the return. Section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced. Section 6015(f) confers upon the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

Petitioner requested relief from joint liability under section 6015 for the payment of the tax reported on the 1994 joint return that was unpaid when the return was filed.

Respondent treated petitioner's request for relief as an election under section 6015(f) and determined that petitioner was not entitled to the requested relief.

Section 6015(e)(1) allows a taxpayer whose request for relief is denied by respondent to petition this Court for a review of such determination.  Our jurisdiction in cases brought under section 6015(e)(1) encompasses a review of respondent's determination with respect to all relief afforded by section 6015.  Ewing v. Commissioner, 118 T.C. 494, 497-507 (2002); Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000); Butler v. Commissioner, supra at 289-290.

This Court treats petitioner's request as a request for equitable relief under section 6015(f), that she be relieved of her obligation to pay any outstanding tax liability reported on their 1994 joint return.  To prevail, petitioner must prove that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.[3]  Jonson v.

---

[3] RRA 1998 sec. 3001, 112 Stat. 726, added sec. 7491, which shifts the burden of proof to the Secretary in certain circumstances.  Sec. 7491, however, is applicable to "court proceedings arising in connection with examinations commencing after the date of the enactment of this Act."  RRA 1998 sec. 3001(c), 112 Stat. 727.  Sec. 7491 is inapplicable to this case. See Warbelow's Air Ventures, Inc. v. Commissioner, 118 T.C. 579, 582 n.8 (2002) (sec. 7491 is effective for court proceedings arising in connection with examinations commencing after July 22, 1998).

Commissioner, 118 T.C. 106, 125 (2002); Cheshire v. Commissioner,
115 T.C. at 198; Butler v. Commissioner, supra.

On July 17, 2002, respondent adopted regulations under
section 6015. These regulations are applicable for all elections
or requests for relief filed on or after July 18, 2002. Sec.
1.6015-9, Income Tax Regs. These regulations are not applicable
in the instant case because petitioner requested relief before
July 18, 2002.

Whether Petitioner Is Entitled to Equitable Relief

Section 6015(f) provides:

Equitable Relief.--Under procedures prescribed by the
Secretary, if--

(1) taking into account all the facts
and circumstances, it is inequitable to hold
the individual liable for any unpaid tax or
any deficiency (or any portion of either);
and

(2) relief is not available to such
individual under subsection (b) or (c),

the Secretary may relieve such individual of such
liability.

Because petitioner is not eligible for relief under either
section 6015(b) or (c), the only avenue for relief available to
petitioner is section 6015(f). As directed by section 6015(f),
the Commissioner has prescribed guidelines in Rev. Proc. 2000-15,
2000-1 C.B. 447, 448, that the Commissioner will consider in
determining whether an individual qualifies for relief under

section 6015(f). Section 4.01 of Rev. Proc. 2000-15, 2000-1 C.B. at 448, lists threshold conditions which must be satisfied before the Commissioner will consider a request for relief under section 6015(f). Respondent agrees that in this case those threshold conditions are satisfied.

Section 4.03 of Rev. Proc. 2000-15, 2000-1 C.B. at 448-449, lists factors that the Commissioner will consider in deciding whether to grant equitable relief under section 6015(f). Section 4.03(1) of Rev. Proc. 2000-15, 2000-1 C.B. at 448-449, lists the following factors that the Commissioner will consider as weighing in favor of granting relief for an unpaid liability: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know that the reported liability would be unpaid at the time the return was signed; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability; and (6) the unpaid liability is attributable to the nonrequesting spouse.

Section 4.03(2) of Rev. Proc. 2000-15, 2000-1 C.B. at 449, lists the following factors that the Secretary will consider as weighing against granting relief for an unpaid liability: (1) The unpaid liability is attributable to the requesting spouse;

(2) the requesting spouse knew or had reason to know that the reported liability would be unpaid at the time the return was signed; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability.  In addition, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449, states: "No single factor will be determinative of whether equitable relief will or will not be granted in any particular case. Rather, all factors will be considered and weighed appropriately."  Furthermore, the list of aforementioned factors is not intended to be exhaustive.

In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.  The Commissioner's exercise of discretion is entitled to due deference; in order to prevail, the taxpayer must demonstrate that in not granting relief, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner,

112 T.C. 19, 23 (1999); <u>Mailman v. Commissioner</u>, 91 T.C. 1079, 1082-1084 (1988).

In the case of a liability that was reported but not paid, the fact that the requesting spouse did not know and had no reason to know that the liability would not be paid is a factor weighing in favor of granting relief. Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449. By contrast, the fact that the requesting spouse knew or had reason to know that the reported liability would be unpaid is an extremely strong factor weighing against relief. Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449. Respondent contends that petitioner did not prove that she did not know or did not have reason to know that the unpaid 1994 tax liability would not be paid at the time the return was filed.

The taxpayer has a "duty of inquiry" to determine the amount of her tax liabilities. See <u>Price v. Commissioner</u>, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court; <u>Butler v. Commissioner</u>, 114 T.C. 276, 284 (2000). A taxpayer is not relieved of her duty of inquiry because she relied on her husband to take care of the returns. See <u>Hayman v. Commissioner</u>, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228. A taxpayer can not obtain the benefits of relief from joint and several liability simply because she turned a "blind eye" by signing a blank return and then failed to make further inquiry

into the ultimate tax liability shown on the joint return.  <u>Price v. Commissioner</u>, <u>supra</u>; <u>Levin v. Commissioner</u>, T.C. Memo. 1987-67.

With the exception of 1992 and 1993, it was Mr. Pierce's practice to have petitioner sign blank returns, complete them, and then mail them on April 15.  Petitioner testified that she signed blank tax returns in early April for almost every tax year from when they were married through 1994.  She claims she never asked or questioned him about potential refunds or amounts they owed.  Based on petitioner's testimony concerning the tax return at issue, we find that petitioner essentially turned a "blind eye" toward the filing of the 1994 Federal income tax return and the failure to pay the taxes shown thereon.

A taxpayer who signs a return without reviewing it, or who signs a blank return, is charged with constructive knowledge of the tax due shown on that return.  <u>Castle v. Commissioner</u>, T.C. Memo. 2002-142.  Thus, despite the fact that petitioner signed a blank return, she should have known of the liabilities shown thereon.

Petitioner also knew that Mr. Pierce had trouble managing the finances.  Petitioner testified:

> Up to and before when I left, I mean, he handled all the finances.  I tried to take over the bills one time because I didn't like the way he took care of them because he would always pay everything like a month late, and we made enough money together then that we could pay the bills.  It was almost like the, you know, the last thing.  If he has money left over, then he'll

> pay the bills from whenever it was. So I took over the bills for a few months, but then he got mad because he never had enough money when he needed it. So he took care of all the finances.

From the early 1990s, when petitioner took care of their finances, she knew that money was tight and there might not be enough money to pay a large tax liability. Petitioner should have made further inquiry to determine the amount of taxes they owed and whether the full liability would be paid.

In addition to petitioner's knowledge of the financial difficulties faced by the family, petitioner knew of other facts that should have forced further inquiry into her family's financial situation. Petitioner had learned through common acquaintances at DOD that Mr. Pierce had quit his job in February 1995. A reasonable person would, at minimum, question their spouse (or ex-spouse) whether enough money remained to pay any tax liability reported on their joint return. Secondly, petitioner testified that the 1994 return was signed after she and Mr. Pierce were separated. It also seems reasonable to this Court that their separation should maintain, if not heighten, her duty to examine any jointly filed returns.

She also argues that because she was unaware of Mr. Pierce's noncompliance with Federal tax law, before, during, and after the year at issue, she had no reason to doubt that the liability would be paid. Petitioner's lack of awareness, however, does not convince this Court that she did not retain an affirmative duty

to examine the return and verify that payment was sent with the return.

Petitioner has not provided this Court with credible evidence to show that she reasonably believed that Mr. Pierce would pay the tax liability at the time she signed the return. As a result, the Court finds that petitioner had constructive knowledge that the liability would not be paid for 1994.

Petitioner also has not shown that she will suffer economic hardship if relief is denied. Petitioner in fact concedes that she can afford to pay the unpaid tax liability but argues that only her 1996 financial situation, not her current one, is relevant. This rationale is apparently the reason that petitioner submitted a 1996 financial statement and not a current one. Thus, this Court holds that petitioner will not suffer economic hardship if relief is denied.

In her petition, petitioner alleges that Mr. Pierce, throughout their marriage, engaged in "brainwashing" as a form of spousal abuse. Her position is that the abusive behavior is a factor that ought to sway the Court to grant her relief from joint and several liability. Petitioner's allegation, however, is unsupported by any evidence. The Court, therefore, does not consider this factor.

Finally, petitioner's assertion that Mr. Pierce was generally deceptive in connection with their finances is

supported by evidence but in no way appears to have affected the reporting of items on the return and does not outweigh the fact that petitioner had an affirmative duty to evaluate and check the return. Although the return was sent without payment, it correctly reported petitioner's and Mr. Pierce's tax liability.

Taking into account all of the facts and circumstances, it would not be inequitable to hold petitioner liable for the underpayment in question. Consequently, respondent's denial of petitioner's request for equitable relief under section 6015(f) is not an abuse of discretion. Based on the facts and circumstances in this case, many of the factors in Rev. Proc. 2000-15, sec. 4.03, 2001-C.B. at 448, are neutral. The negative factors discussed above outweigh any positive factors in favor of relief. Based on the record before this Court, we do not find respondent's denial of section 6015 relief to be arbitrary, capricious, or without sound basis in fact or law.

The Court has considered all of the other arguments made by petitioner, and, to the extent they remain unaddressed, concludes they are without merit. We hold that respondent correctly determined that collection by levy should proceed.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.